910 So.2d 658 (2005)
George Lamar JACKSON, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-02235-COA.
Court of Appeals of Mississippi.
March 8, 2005.
*661 Jim Davis, attorney for appellant.
Office of the Attorney General, by W. Glenn Watts, Jackson, attorney for appellee.
Before LEE, P.J., IRVING and GRIFFIS, JJ.
IRVING, J., for the Court.
¶ 1. George Jackson was convicted of armed robbery by a Harrison County jury. He was sentenced as a habitual offender to forty years in the custody of the Mississippi Department of Corrections. Jackson now appeals and asserts that: (1) the trial court erred in allowing the State to peremptorily strike a black juror because of the juror's religious beliefs, (2) he received ineffective assistance of counsel, (3) a delay in his appeal resulted in due process and equal protection violations, (4) a discovery violation occurred at trial, (5) he was denied his Sixth amendment right to a speedy trial, (6) defense counsel was denied an opportunity to properly cross-examine a State's witness, and (7) the trial court violated his constitutional right to testify.
¶ 2. Finding no reversible error, we affirm Jackson's conviction and sentence.

FACTS
¶ 3. On the night of June 13, 1991, Timothy Thibideau, an assistant manager at the Cajun Chicken Restaurant in Gulfport, was walking to his car in the store's parking lot when he noticed that a vehicle heading east began to slow down. The car pulled into the parking lot, and as Thibideau proceeded to get into his car, a man brandishing a gun ordered him to give him a bank bag containing approximately $750.[1] Thibideau complied, and gave the man the money, along with his hat and tie. The assailant then ordered Thibideau to lie down on the seat of his (Thibideau's) car. Thibideau complied and remained in that position until he heard the assailant's car leave. Thibideau testified that he was able to get a good look at the assailant because the assailant was not wearing a mask and he (Thibideau) stared in his face for several minutes. After the assailant left, Thibideau went back into the store and called the police.
¶ 4. At trial, the State offered the testimony of Detective Steve Barnes who testified that six days after the robbery, he *662 observed individuals in a car matching the description of the vehicle used in the crime. Barnes further testified that he also observed two men on a motorcycle following behind the vehicle. Barnes stated that when he called in on his radio the tag numbers from the car and motorcycle, the passenger on the motorcycle looked back at him and the motorcycle then took off at a high rate of speed. Barnes pursued the motorcycle and a chase ensued. The chase finally ended when the driver of the motorcycle lost control and wrecked the bike. The occupants of the motorcycle, later identified as Jackson and Kendrick Simms, fled into a wooded area, but were apprehended a short time later. Thibideau was able to identify Jackson in a photo line-up as the person who robbed him at gun point. Additional facts will be related during our discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Batson Challenge
¶ 5. Jackson first argues that the State violated Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) when it used a peremptory challenge to exclude a black juror from the jury panel because of the juror's religious beliefs. Jackson contends that religious preference is not an appropriate race-neutral reason to exclude a juror. The State, however, contends that there was no Batson violation because the trial judge found that the juror's attitude, as perceived by the prosecution, was a race-neutral reason for the peremptory strike.
¶ 6. "[Our supreme court] has stated on numerous occasions that a trial court's determinations under Batson are afforded great deference because they are largely based on credibility." Johnson v. State, 792 So.2d 253, 257 (¶ 10) (Miss.2001) (citing Puckett v. State, 788 So.2d 752, 756 (Miss.2001)). "In reviewing an alleged Batson violation, [an appellate court] will not reverse factual findings relating to a Batson challenge unless they are clearly erroneous." Id.
¶ 7. We turn now to the explanation given for striking the juror. The record reflects the following:
MR. SIMPSON [THE PROSECUTOR]: Your Honor, adopting what the Court has set forth as to the other members of the jury who had been selected by the State and the fair representation of black members of the race on the jury [sic], in addition to those reasons, Mr. Powell by virtue of his employment, I inquired of his employment as funeral home director, and the State had some question in fear of a holinessholier than thou attitude or mentality of this perspective juror and exercised a peremptory challenge. (emphasis added).
Following the State's explanation, the following exchange occurred:
THE COURT: Comments by the defense?
MR. HOLDER (DEFENSE COUNSEL): Excuse me, judge?
THE COURT: Comments by the defense?
MR. HOLDER: Yes, sir, judge. I don't really know what is meant by holier than thou about a funeral director.
THE COURT: He is ahis religious preference is Holiness. That's what he's saying.
¶ 8. In support of his argument that juror Maurice Powell was improperly struck because of his religious beliefs, Jackson relies on Thorson v. State, 721 So.2d 590 (Miss.1998). In Thorson, the State exercised peremptory challenges against two jurors solely because they were members of the Holiness faith. *663 Thorson, 721 So.2d at 593(¶ 7). The Thorson defendant argued that striking a juror because of the juror's religious beliefs violated the Equal Protection Clause and Section 13-5-2 of the Mississippi Code of 1972, as amended. Id. Our supreme court declined to extend Batson protection to religious-based peremptory strikes of jurors but held that religious-based peremptorily strikes violated Article 3, Section 18 of the Mississippi Constitution of 1890 and Section 13-5-2 of the Mississippi Code of 1972 as amended.[2] As a result, the supreme court reversed and remanded the case for a new trial. Id. at 593(¶ 11).
¶ 9. While Jackson is correct that Thorson prohibits religious-based peremptory striking of jurors, this fact avails him naught because, unlike the defendant in Thorson, Jackson did not object to the striking of the juror on the basis that such action was violative of the Equal Protection Clause, as well as of our statutory law. As we have already observed, Thorson did not extend the Batson protection to religious-based peremptory strikes. The only objection offered by Jackson was a Batson objection. Batson's underpinning lies within the Equal Protection Clause. Thus, a Batson challenge does not implicate or raise an objection on state statutory grounds. The law is well settled in this state that an objecting party is obligated to articulate the specific basis for the objection being made. Seeling v. State, 844 So.2d 439, 445(¶ 17) (Miss.2003). Since Jackson did not object upon the statutory basis implicated in Thorson, we find no error in the trial judge's decision accepting the reason offered by the State as a race-neutral reason not prohibited by Batson.
In finding that Thorson provides no shelter for Jackson, we are keenly aware that the supreme court, in deciding Thorson, relied on both state constitutional and statutory provisions when only the statutory provision had been raised or asserted by the defendant. However, it also noteworthy that the supreme court did not assert the plain error doctrine as a basis for its discussion of the constitutional provision.
¶ 10. We further note that the record fails to reveal a pattern of discrimination by the prosecution in its exercise of peremptory strikes against black jurors. Prior to the peremptory strike against Powell, the prosecution had already accepted three blacks to serve on Jackson's jury. Therefore, a Batson race-neutral explanation probably was not required at that point. Consequently, we find that Jackson's argument on this issue is without merit.

(2) Ineffective Assistance of Counsel
¶ 11. Jackson next claims that he received ineffective assistance of counsel at trial. He specifically contends that his attorney failed to conduct discovery, file certain pre-trial motions, subpoena certain alibi witnesses, request a continuance, and *664 properly instruct the jury. Jackson also contends that his attorney had an obligation to make proper arrangements for the processing of his appeal.
¶ 12. To establish an ineffective assistance of counsel claim, Jackson must show (1) a deficiency in counsel's performance that is (2) sufficient to constitute prejudice to his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
¶ 13. A review of the record reveals that Jackson has failed to establish both elements of the Strickland test. We note that even if trial counsel's performance could be considered deficient in failing to do those things alleged by Jackson, he has yet to prove the requisite showing of prejudice to support an ineffective assistance of counsel claim. The law is clear that "[a]ssertions of error without prejudice do not trigger reversal." Nicholson on Behalf of Gollott v. State, 672 So.2d 744, 751 (Miss.1996) (citing Hatcher v. Fleeman, 617 So.2d 634, 639 (Miss.1993)).
¶ 14. Further, Mississippi "recognizes a strong but rebuttable presumption that counsel's conduct falls within a broad range of reasonable professional assistance." McQuarter v. State, 574 So.2d 685, 687 (Miss.1990) (citing Gilliard v. State, 462 So.2d 710, 714 (Miss.1985)). To overcome this presumption, the defendant "must show that there is a `reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'" Handley v. State, 574 So.2d 671, 683 (Miss.1990) (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052). In addition to the presumption that counsel's conduct is reasonably professional, there is a presumption that counsel's decisions are strategic in nature. Leatherwood v. State, 473 So.2d 964, 969 (Miss.1985) (citing Murray v. Maggio, 736 F.2d 279, 282 (5th Cir.1984)). In sum, "counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy." Cole v. State, 666 So.2d 767, 777 (Miss.1995) (citing Murray v. Maggio, 736 F.2d 279 (5th Cir.1984)).
¶ 15. Jackson has failed to demonstrate the likelihood of a different outcome had counsel performed in a different manner. In fact, the record reveals that the trial court disposed of many of the issues that Jackson now complains his attorney failed to address. Similarly, although Jackson's attorneys were negligent in perfecting his appeal, Jackson has still failed to fulfill his obligation of demonstrating prejudice as required under the Strickland test. As a result, Jackson's argument on this issue fails.

(3) Delay of Appeal
¶ 16. Jackson next argues that the charges against him should be dismissed because of a twelve-year delay in processing his appeal. He contends that this delay resulted in a violation of his due process rights. The State, however, counters that Jackson has not shown a violation of his due process rights nor has he shown any prejudice as a result of the delay of his appeal.
¶ 17. "[Federal courts] have recognized that `extreme delay in the processing of an appeal may amount to a violation of due process.'" U.S. v. Tucker, 8 F.3d 673, 676 (9th Cir.1993) (quoting United States v. Antoine, 906 F.2d 1379, 1382 (9th Cir.)), cert. denied, 498 U.S. 963, 111 S.Ct. 398 (1990). As a result, the speedy trial factors enumerated in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) have been used to evaluate appellate delay claims. U.S. v. Bermea, 30 F.3d 1539, 1569 (5th Cir.1994). *665 Factors to be considered include length of delay, the reasons for delay, the defendant's assertion of his right to appeal, and prejudice to the defendant occasioned by the delay. Bermea, 30 F.3d at 1569 (citing Tucker, 8 F.3d at 676). "The fourth inquiry is the most important: `a due process violation cannot be established absent a showing of prejudice to the appellant.'" Tucker, 8 F.3d at 676 (quoting Antoine, 906 F.2d at 1382). "[The Courts] have in turn analyzed this issue by focusing on three types of potential prejudice from appellate delay: `(1) oppressive incarceration pending appeal, (2) anxiety and concern of the convicted party awaiting the outcome of the appeal, and (3) impairment of the convicted person's grounds for appeal or of the viability of his defense in case of retrial.'" Id.
¶ 18. Although we are unable to precisely ascertain the exact length of delay in perfecting Jackson's appeal, the record reveals the following pertinent facts expressed in an order dated June 12, 2003, ruling on one of Jackson's pro se motions:
On September 9, 1992, the jury found Jackson guilty of armed robbery, but were unable to agree on a sentence of life imprisonment. Attorney W.F. Holder represented Jackson at trial. After determining that Jackson was, indeed, an habitual offender, then Circuit Judge James E. Thomas sentenced him to serve 40 years without parole.
On September 11, 1992, Attorney Holder filed motions for JNOV or a new trial, and for reconsideration of sentence. That same day, Judge Jerry O. Terry entered an order holding over from term to term until heard Jackson's post-trial motions, and allowing Jackson an additional 30 days to file any additional post-conviction motions. The order also stated Jackson was to be held in Harrison County pending disposition of his motions, but he was, instead transported to the penitentiary. On October 23, 1992, Holder moved to have Jackson returned to Harrison County "pending the final disposition of this case and his appeal of same...." This motion clearly states that Jackson "intends to appeal this case...."
On December 17, 1992, Judge Kosta Vlahos entered an order granting a motion for continuance filed by Attorney Warren Conway and continuing the matter "a date that is mutually acceptable to all parties in this matter." Nothing in the court file documents Conway's appointment to represent Jackson, and the motion for continuance is the only action taken by Conway reflected in the file. Nothing in the court file indicates the post-trial motions were ever again set for hearing after December 1992.
¶ 19. A review of the record reveals nothing to suggest that the State was responsible for the delay of Jackson's appeal. The record, however, reveals that much of the delay was attributable to the repeated failures of Jackson's attorneys in securing a ruling on Jackson's post-trial motions which ruling was necessary to commence the appellate process.[3]
¶ 20. It is undisputable that the perfecting of Jackson's appeal took an inordinately long time. However, we are not persuaded that Jackson has satisfied the most important factor in the appellate delay analysis, the requisite showing of prejudice. We now focus our attention on this issue.
*666 ¶ 21. First, we fail to see how Jackson's incarceration pending the outcome of his appeal was oppressive. The record reveals that Jackson received a fair trial, and the jury found him guilty as charged. Additionally, a thorough review of the trial court proceedings reveals that Jackson's appeal is meritless. Therefore, Jackson has merely been serving his sentence as mandated by law. Tucker, 8 F.3d at 675 (citing Antoine, 906 F.2d at 1382). Further, although Jackson may have undoubtedly experienced anxiety and concern during the pendency of his appeal, he has made no showing that it was of such a degree that would distinguish his case from that of any other prisoner awaiting the outcome of an appeal. Tucker, 8 F.3d 673, 676 (quoting Antoine, 906 F.2d at 1382-83).
¶ 22. Finally, we fail to see how the delay in perfecting Jackson's appeal has impaired his grounds for appeal or impaired his defense in the event of a retrial. Although Jackson claims that the failure to perfect his appeal in a timely manner affected his classification and privileges in prison, and caused alibi witnesses to become unavailable, we note that even if Jackson's attorneys had timely perfected his appeal, he still would not have succeeded. Although twelve years late, this is his appeal, and we find no basis for ordering a new trial. Therefore, any issue about the unavailability of alibi witnesses is moot. It escapes our perception how the delayed appeal affected his classification and privileges in prison and Jackson does not enlighten us.

(4) Speedy Trial Violation
¶ 23. Jackson argues that he was denied his Sixth Amendment right to a speedy trial. He specifically contends that the delay of his trial caused certain witnesses to become unavailable to testify.
¶ 24. The constitutional right to a speedy trial attaches, and begins to run upon the defendant's arrest. Handley v. State, 574 So.2d 671, 674 (Miss.1990) (citing Smith v. State, 550 So.2d 406, 408 (Miss.1989)). When the right to a speedy trial is at issue, we are required to apply the balancing test announced in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to determine if the right to a speedy trial has been denied. Smith, 550 So.2d at 408. The Barker factors include: (1) the length of the delay; (2) the reason for delay; (3) the defendant's assertion of his right to a speedy trial; and, (4) prejudice to the defendant by the delay. Barker, 407 U.S. at 530, 92 S.Ct. 2182. "No one factor, in itself,[is] dispositive; rather, they must be considered together in light of all the circumstances." Adams v. State, 583 So.2d 165, 167 (Miss.1991) (citing Smith, 550 So.2d at 408).
¶ 25. We now analyze the Barker factors in order to determine if Jackson's right to a speedy trial was violated.

(a) Length of delay
¶ 26. Under Mississippi law, a delay of eight months or longer is presumptively prejudicial. Adams, 583 So.2d at 168 (citing Smith, 550 So.2d at 408). The record reveals that Jackson was arrested on June 19, 1991, indicted on December 4, 1991, and his trial began on September 8, 1992. Thus, a period of almost fifteen months elapsed before Jackson's case was taken to trial. Accordingly, we find that the delay in the instant case is presumptively prejudicial.

(b) Reason for delay
¶ 27. Because there is presumptive prejudice due to the length of delay in Jackson's trial, the State has the burden of providing a valid reason for the delay. We *667 find that since the State has not offered a valid explanation for the delay, this factor is weighed against the State.

(c) Assertion of right
¶ 28. Although it is the State's duty to ensure that the defendant receives a speedy trial, a defendant also has a responsibility to assert this right. Wiley v. State, 582 So.2d 1008, 1012 (Miss.1991) (citing Flores v. State, 574 So.2d 1314, 1323 (Miss.1990)). The record reveals that Jackson presented a pro se motion to dismiss on the first day of trial. However, a motion to dismiss for lack of a speedy trial is not the same as a demand for a speedy trial. Brewer v. State, 725 So.2d 106, 118 (Miss.1998) (citing Barker, 407 U.S. at 531-32, 92 S.Ct. 2182, 33 L.Ed.2d 101). The trial judge found that although Jackson could have on more than one occasion made a demand for a speedy trial, he had failed to do so. Accordingly, we weigh this factor against Jackson.

(d) Prejudice to the defendant
¶ 29. Jackson claims that his defense was prejudiced because his witnesses were unavailable to testify. He contends that as a result, the charges against him should be dismissed.
¶ 30. Prejudice is assessed in light of the interest of the defendant which the right to a speedy trial is designed to protect: (1) prevention of oppressive pre-trial incarceration, (2) limitation of the possibility of impairment of defense, and (3) minimization of anxiety and concern of the accused. Barker, 407 U.S. at 523, 92 S.Ct. 2182.
¶ 31. The record indicates that on the morning of trial, Jackson informed the trial judge of three potential witnesses. However, Jackson was unable to produce sufficient personal information about one of the witnesses. He could only provide a nickname and did not know where that witness could be found. Jackson informed the trial judge that the two remaining witnesses had availed themselves to testify. Jackson told the court that he had not subpoenaed these witnesses. The judge informed Jackson that the court could grant him subpoenas to get them. When the witnesses failed to show up for trial, Jackson refused the trial judge's offer to subpoena the witnesses. Thus, this factor must be weighed against Jackson.

(e) Balancing
¶ 32. Finally, a balancing of the Barker factors fails to support Jackson's claim that he was denied his constitutional right to a speedy trial. While there was some delay, it is offset by Jackson's failure to assert his right to a speedy trial. Further, Jackson has failed to demonstrate any actual prejudice as a result of the delay. Therefore, this issue is without.

(5) Cross-examination of witness
¶ 33. Jackson contends that he was denied the right to cross-examine State's witness Kendrick Simms, who was with Jackson at the time of the incident. Jackson specifically contends that he was not allowed to cross-examine Simms regarding the reason why Simms's probation was not revoked, even though Simms was on probation at the time of the crime.
¶ 34. The record reveals that on cross examination, Jackson asked Simms the following question:
Q: Okay. Now, when this happened on June the 13th, 1991, and when you were subsequently picked up by the police, you were on probation in Louisiana, weren't you?
The State immediately objected to the question, and the trial judge allowed Jackson to make a proffer outside the presence *668 of the jury in which Jackson attempted to ascertain why the State of Louisiana had failed to revoke Simms's probation. At the conclusion of the proffer, Jackson made the following argument as to why he should have been allowed to bring the information before the jury:
MR. HOLDER: [DEFENSE]: Well, judge, obviously this man, not only has he said he lied to the police, now he's given different testimony here from what he said before. And I think part of the reason he evidently said anything at all is because they were using that at the police station to prompt the statement out of him and what to say.
THE COURT: Well, first place, I note nothing in the file to indicate that you were going to attempt to get into this. Although this defendant is an unindicted co-conspirator, he is still a witness under the rules of evidence to be treated just like any other witness. There is no motion in here to reveal any deal. There's not been any indication, as I understand, in anything I have heard pretrial or trial that there was any deal, so to speak, cut with this defendant. In fact, the only thing so far that has been said is that he was on probationhe was asked whether or not he was on probation. He acknowledged that he was on probation for simple burglary for a year, and that after he apparently got out of jailI take it you got out of jail, right?
THE WITNESS: Yeah.
THE COURT: You went back to Louisiana and you talked to your probation officer, which was a female?
THE WITNESS: Yes.
THE COURT: And she said she was going to talk to the police over here. And the police over here, as you brought out, told him in the process of questioning him that he could be prosecuted as an adult. But I mean, you're jumping from a to z without anything in between. There is noshow me something. Do you have any indication that the police, in fact, cut a deal with him.
MR. HOLDER: Well, judge, I mean, something happened. He didn't get indicted. And he's the only person here that's admitted he did it that was there.
THE COURT: That's not responsive to my question, Bubba. Why he's not indicted, I don't know. You haven't even asked that. I'm not sure he's the proper person to be asking the question to anyway. Do you have some indication in your discovery or in conversations with any of the police or DA's office that the police or the District Attorney deliberately did not indict him or cut a deal with him in return for testimony?
MR. HOLDER: Well, I intend to show that through Detective Carvin.
¶ 35. The record reveals that although Jackson cross-examined Detective Carvin, his testimony did not shed any light regarding why Simms's probation had not been revoked, or that the State had entered into a deal with Simms in exchange for his testimony. Likewise, the State denied that it had entered into a deal with Simms.
¶ 36. Jackson failed to offer evidence that Simms had entered into a deal with the State in exchange for his testimony. As a result, the trial judge did not err in refusing to allow him to question Simms on the subject in the presence of the jury. Therefore, this issue is without merit.

(6) Discovery Violation
¶ 37. Jackson contends that a discovery violation occurred when the State waited until the morning of trial to provide his attorney with photographs depicting the scene of the motorcycle wreck. Jackson argues that he was entitled to the *669 discovery of the photographs even though he did not file an appropriate motion requesting the photos. The State argues that there was no discovery violation because the prosecution provided Jackson with the photographs as soon as they became available to them.
¶ 38. The case of Box v. State, 437 So.2d 19 (Miss.1983) first set forth the procedure trial courts should follow when confronted with a discovery violation. McCullough v. State, 750 So.2d 1212, 1217(¶ 18) (Miss.1999) (citing Duplantis v. State, 644 So.2d 1235 (Miss.1994)). Rule 9.04 of the Uniform Circuit and County Court Rules now reflects the Box procedure. Id. "When faced with previously undisclosed evidence to which the defendant has objected, the trial court should give the defendant a reasonable opportunity to familiarize himself with the evidence." Id. "If the defendant thereafter believes he may be prejudiced by admission of the evidence because of his lack of opportunity to prepare to meet it, he must request a continuance." Id. "Should the defendant fail to request a continuance, he has waived the issue." Id.
¶ 39. The following exchange occurred when the State attempted to admit the photographs into evidence:
MR. HOLDER: Your Honor, for the record, the only objection I have is the first I even knew those photographs existed was today. And I object to the timeliness of them being furnished to me. Because there is matters in them that I think I would have liked to have investigated,
THE COURT: An objection like that comes right during the middle of the trial on me, gentlemen. You weren't aware of this, you're telling me, at all beforehand?
MR. HOLDER: Not before this morning, no, sir.
THE COURT: Before trial today?
MR. HOLDER: Yes, sir.
THE COURT: When did you find out?
MR. HOLDER: I can't remember when. I don't remember exactly.
MR. SIMPSON: Approximately 9:00 or so this morning. We received them this morning, your Honor. They were provided upon our receipt.
THE COURT: It's nothing but a photograph, I take it, of matters which you were already aware of, correct?
MR. HOLDER: No, Sir.
THE COURT: You weren't aware that there was a chase.
MR. HOLDER: Yes, sir. I was aware that there was a chase.
THE COURT: And it was involving a motorcycle?
MR. HOLDER: I wasn't aware of what all is in those photographs he has got there, no.
THE COURT: Well, I understood from earlier matters we were taking up, you had preliminary hearing on the case?
MR. HOLDER: Yes, sir.
THE COURT: And you have had a full copy of the DA's file.
MR. HOLDER: Yes, sir.
THE COURT: And you have known since this morning
MR. HOLDER: Your Honor, if we are going to do it this way, I would ask that the jury be removed.
THE COURT: I can shorten this real quick, you have known since this morning. I think if you knew since this morning before we even started this trial of the fact that these photographs were potentially going to be placed in evidence, you should have brought it to my attention before this. But they seem to be nothing more than cumulative, *670 in any event, with the testimony that's coming forward, which you are already aware of. Objection noted. Overruled. You can mark them in.
¶ 40. By failing to request a continuance, Jackson waived any violation of Rule 9.04. However, notwithstanding the waiver, we find that the trial judge did not err in allowing the photos into evidence. The record reflects that the State immediately turned the photographs over to Jackson for review as soon as it received them. Further, Jackson cannot claim prejudice or unfair surprise by the images depicted in the photograph because he was fully aware that there was a motorcycle chase and that a gun was found at the scene of the wreck. As a result, this issue lacks merit.

(7) Defendant's Right to Testify
¶ 41. Jackson finally argues that the trial court violated his right to testify. Jackson, citing Peterson v. State, 518 So.2d 632 (Miss.1987), contends that the trial judge, without considering certain factors expressed in Peterson, informed him that the State could use a prior embezzlement conviction for impeachment purposes if he decided to testify. Jackson contends this had a chilling effect on his decision to testify, and as a result, he decided not to testify.
¶ 42. The record reveals that the following conversation transpired between Jackson and the trial judge:
THE COURT: You have the absolute right to testify if you desire. If you do testify, of course, the benefit of that is that the jury personally gets to hear from you what your defense is. The bad part is that the State may cross-examine you and attempt to impeach your testimony, just as your lawyer has tried to impeach the testimony of the State witnesses. It's already been noted to me that you have a prior conviction for embezzlement, correct sir?
THE DEFENDANT: Sir, I don't have no conviction of embezzlement. I don't know nothing about that. Now a burglary, yeah, but not no embezzlement. I don't have no conviction.
MR. HOLDER [DEFENSE COUNSEL]: Judge, as far as I can tell, he does. He might not understand what it is, but at least the State has furnished me a certified copy. I think that one is from Jackson County. Judge, I've got an order from Jackson County, August of '85 signed by Judge Mills. It says embezzlement. Sentenced to three years. This was furnished me, of course, by the District Attorney.
THE DEFENDANT: I don't know nothing about that embezzlement. I don't know nothing about that. I have never been given nothing saying I had ever been charged with embezzlement.
THE COURT: All I can say isI'll put it like this, if you testify and if you're asked by the State as to whether or not you have been convicted of embezzlement, you can as you're doing now, deny that. If you do deny that you were convicted of embezzlement and the State has the appropriate certified copy of the conviction, then they can put it in evidence against you, okay. And it will be up to the jury as to whether to believe the record or to believe you, okay. That conviction on its face is admissible without any further hearing.
After consulting with his attorney and family members, Jackson informed the court of his decision regarding whether or not he would testify:
MR. HOLDER: Judge, the defendant, after my consultations with him and after  if I could, his family members for the record are Doris Thomas and Muriel Jackson. And we have all decided that *671 it would be in his best interest for him not to testify.
THE COURT: Is that your decision, sir?
THE DEFENDANT: Yes, sir.
THE COURT: All right. You understand the ramifications of that? I have already told you the good and bad of testifying or not testifying. You understand what I have said so far?
THE DEFENDANT: Yes, sir.
¶ 43. The above colloquy reveals that Jackson voluntarily waived his right to testify after being informed that his prior embezzlement conviction could be used against him for impeachment purposes. While Jackson's enthusiasm for testifying may have suffered a chilling effect upon being advised by the trial judge that his (Jackson's) embezzlement conviction could be used against him for impeachment purposes, that is the reality of our adversarial system.
¶ 44. We further note that Jackson's reliance on Peterson is misplaced. Peterson dealt with a Rule 609(a)(1) crime while embezzlement, the impeaching crime involved here, is a Rule 609(a)(2) crime. No balancing analysis is required for Rule 609(a)(2) crimes involving dishonesty or false statements. Peterson, 518 So.2d at 636, n. 1; M.R.E. 609 cmt. Jackson does not contend that his embezzlement conviction was more than ten years old. In fact Jackson denied having been convicted of embezzlement. However, the State presented a certified copy of the judgment of conviction which showed that the conviction was less than ten years old. This issue is without merit.
¶ 45. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF FORTY YEARS AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT PROBATION OR PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] Thibideau testified that two men got out of the car, but the driver remained inside.
[2] Article 3, Section 18 of the Mississippi Constitution of 1890 reads in part:

No religious test as a qualification for office shall be required; and no preference shall be give by law to any religious sect or mode of worship; but the free enjoyment of all religious sentiments and the different modes of worship shall be held sacred....
Section 13-5-2 of the Mississippi Code of 1972 as amended reads in pertinent part:
It is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens have the opportunity in accordance with this chapter to be considered for jury service in this state and an obligation to serve as jurors when summoned for that purpose. A citizen shall not be excluded form jury service in this state on account of race, color, religion, sex, national origin, or economic status.
[3] The record reveals that Jackson petitioned the supreme court in a pleading filed on February 25, 1998, for permission to file an out of time appeal. The record, however, does not contain the court's ruling on Jackson's motion.