LEE, C. J.,
for the Court:
¶ 1. Walter Carpenter was convicted of murder on June 11, 2004, by a jury in the Leflore County Circuit Court. Carpenter was sentenced to serve a term of life in the custody of the Mississippi Department of Corrections (MDOC). Carpenter now appeals, asserting the trial court committed reversible error by: (1) allowing his wife to testify against him over his objection; (2) denying his motion for directed verdict; (3) granting the State’s instruction on transferred intent; and (4) violating his due-process rights by unreasonably delaying a ruling on his post-trial motions, or, alternatively, by denying his motion for judgment notwithstanding the verdict (JNOV) or for new trial. Finding no error, we affirm.
FACTS
¶ 2. Walter Carpenter and his wife, Jewell, lived in the same house in Greenwood, Mississippi, for approximately thirty years. On June 11, 2004, Carpenter, who was seventy-three years old at the time, and Jewell were at their home with a visitor, Nellie Morgan. Jewell’s son from another relationship, Maurice, age forty-six, lived with the Carpenters. Shortly after Morgan left the house, Carpenter and Jewell began arguing about their broken air conditioner. As the argument escalated, Carpenter started cursing. At that point, Maurice, who had been in his bedroom, came into the room where they were argu *293 ing and asked Carpenter, “Why are you talking to her like that?” Carpenter then cursed at Maurice, and the two began exchanging curse words and threats. Jewell yelled for them to stop arguing, and Maurice left the room.
¶ 3. Carpenter got up from where he was sitting, pushed Jewell backwards against the wall, entered the Carpenters’ bedroom, and pulled out a paper bag from under a chest of drawers. From the paper bag, he retrieved a hand gun and began to load it. Jewell then asked Carpenter, “What are you going to do? Put it down.” Maurice then came back into the room with the Carpenters and stood behind Jewell. Maurice said to Carpenter, “What are you going to do? I know you not [sic] going to shoot Mrs. Jewell, your wife, my mother.” Carpenter then raised the gun and fired. Jewell testified she thought Carpenter may have been aiming the gun at her. Regardless, Jewell stated she leaned over right as Carpenter fired, and the bullet struck Maurice. According to Jewell, Maurice was standing so close to her that the “heat” from the bullet struck the side of her face.
¶ 4. Jewell testified Carpenter had been drinking earlier during the day. Jewell stated Carpenter was drunk and was having difficulty walking. Morgan also testified Carpenter smelled of alcohol that night. After Carpenter shot Maurice, Jewell called Morgan for help. Morgan came back to the Carpenter’s house, saw Maurice on the floor, and placed a cold compress on a powder burn on Jewell’s cheek.
¶ 5. Detective L.V. Archie, an officer with the Greenwood Police Department, responded to the scene. Archie testified Carpenter admitted to shooting Maurice. Melvin Williams, a patrolman with the Greenwood Police Department, also responded to the scene. Williams testified he asked Carpenter what had transpired. According to Williams, Carpenter responded he had shot Maurice. Carpenter also stated he had raised Maurice and was not going to let Maurice run his house. According to both Archie and Williams, Carpenter never told them he shot Maurice in self-defense.
¶ 6. Carpenter claims he fired the gun after Maurice made an “awkward” move toward him. He contends that because Maurice was much bigger and stronger than him, he shot Maurice in self-defense.[1] Carpenter did admit that Jewell was standing in front of Maurice. According to Jewell, Maurice never made any move towards Carpenter.
DISCUSSION
I. SPOUSAL IMMUNITY
¶ 7. Carpenter first argues the admission of Jewell’s testimony over his objection was a violation of Mississippi Code Annotated section 13-1-5 (Rev.2002). “The standard of review regarding admission or exclusion of evidence is abuse of discretion.” Newell v. State, 49 So.3d 66, 71 (¶ 9) (Miss.2010). This Court will not disturb the trial court’s evidentiary ruling “unless the error adversely affects a substantial right of a party.” Id. (quoting Mingo v. State, 944 So.2d 18, 28 (¶ 23) (Miss.2006)).
¶ 8. Section 13-1-5 provides:
Husbands and wives may be introduced by each other as witnesses in all cases, civil or criminal, and shall be competent witnesses in their own behalf, as against *294 each other, in all controversies between them. Either spouse is a competent witness and may be compelled to testify against the other in any criminal prosecution of either husband or wife for a criminal act against any child, for contributing to the neglect or delinquency of a child, or desertion or nonsupport of children under the age of sixteen (16) years, or abandonment of children. But in all other instances where either of them is a party litigant the other shall not be competent as a witness and shall not be required to answer interrogatories or to make discovery of any matters involved in any such other instances without the consent of both.
(Emphasis added). Carpenter argues Jewell was incompetent to testify against him and, thus, allowing Jewell’s testimony constituted reversible error. However, communications between spouses made in the presence of a third party do not fall within the protection of section 13-1-5. Fanning v. State, 497 So.2d 70, 74 (Miss.1986). Jewell presented testimony regarding statements Carpenter made during the time of the incident. These statements were made in the presence of a third party, Maurice, rendering them outside the gambit of confidential communications under section 13-1-5.
¶ 9. In Maiben v. State, 405 So.2d 87, 88 (Miss.1981), Leroy Maiben shot his father-in-law, and immediately afterwards, Maiben assaulted and threatened to kill his wife. The Mississippi Supreme Court held that “the continuing acts of violence on the occasion in question ... constitutes such a controversy between [husband and wife] that, being willing to testify, she was a competent witness for the State in a prosecution of appellant, her husband, for the death of her father....” Id. at 90. Although Carpenter did not verbally threaten Jewell, the heated argument between Carpenter and Jewell sparked the sequence of events leading to Maurice’s death. We find this sufficient to make it a “controversy” between them under section 13-1-5. Furthermore, Jewell testified she thought Carpenter was going to shoot her and would have if she had not leaned over in time. Thus, the admission of Jewell’s testimony was not a violation of section 13-1-5, and the trial court did not abuse its discretion. This issue is without merit.
II. DIRECTED VERDICT
¶ 10. Carpenter next argues the trial court committed reversible error by denying his motion for directed verdict. Specifically, he claims the State failed to prove that he possessed a deliberate design to kill Maurice. A directed verdict challenges the legal sufficiency of the evidence supporting the guilty verdict. Parker v. State, 30 So.3d 1222, 1234-35 (¶ 48) (Miss.2010). “[T]he critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]’ ” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citation omitted). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction. Id. Furthermore, it is well-settled law that the jury determines the credibility of the witnesses and resolves conflicts in the evidence. Davis v. State, 866 So.2d 1107, 1112 (¶ 17) (Miss.Ct.App.2003).
¶ 11. We first note that Carpenter’s indictment stated he “did unlawfully, wil-fully, feloniously, and with malice aforethought, ... kill and murder one Maurice Carpenter....” The jury was further instructed on both deliberate-design murder *295 and depraved-heart murder. However, Carpenter’s argument focuses solely on deliberate-design murder.
¶ 12. Mississippi Code Annotated section 97-3-19(l)(a) (Rev.2006) defines deliberate-design murder as “[t]he killing of a human being without the authority of law by any means or in any manner ... when done with deliberate design to effect the death of the person killed, or of any human being.” The State must prove beyond a reasonable doubt that: “(1) the defendant killed the victim; (2) without the authority of law; and (3) with deliberate design to effect his death.” Brown v. State, 965 So.2d 1023, 1030 (¶ 27) (Miss.2007).
¶ 13. During his motion for directed verdict, Carpenter’s attorney simply stated: “[T]he State has failed to make out a prima facie case of murder.” He later renewed his motion for directed verdict, stating: “[T]he State has failed to prove beyond a reasonable doubt that my client is guilty of murder.” However, Carpenter’s attorney failed to specify which element of the crime the State failed to prove. A motion for directed verdict must be specific in nature, and “in the absence of such specificity, the trial court will not be put in error for overruling the same.” King v. State, 897 So.2d 981, 993 (¶ 39) (Miss.Ct.App.2004). This issue is procedurally barred.
¶ 14. Regardless of the procedural bar, there was sufficient evidence for the jury to find Carpenter guilty of deliberate-design murder.[2] The Mississippi Supreme Court has held that “deliberate design may be inferred from the use of a deadly weapon.” Hawthorne v. State, 835 So.2d 14, 23 (¶ 40) (Miss.2003) (citation omitted). Carpenter admitted he shot and killed Maurice. Although Carpenter claims he shot Maurice in self-defense, there was no evidence to indicate Maurice threatened Carpenter. Jewell testified she thought Carpenter might have been aiming the gun at her. Jewell further stated Maurice made no move toward Carpenter that would substantiate Carpenter’s self-defense claim. In fact, Maurice only returned to the room when he overheard Jewell begging Carpenter to put his gun down. This issue is without merit.
III. JURY INSTRUCTION
¶ 15. In his next issue on appeal, Carpenter contends the trial court committed reversible error in granting the State’s jury instruction on transferred intent. When reviewing the grant or denial of a jury instruction, the instruction is read “as a whole to determine whether the jury was fully and fairly instructed according to the applicable law.” Jackson v. State, 68 So.3d 709, 712-13 (¶ 12) (Miss.Ct.App.2011) (quoting Clark v. State, 40 So.3d 531, 544 (¶ 36) (Miss.2010)). “[I]f all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results.” Id. (quoting Clark, 40 So.3d at 544 (¶ 36)).
¶ 16. The jury instruction states: The Court instructs the Jury that under law, the intent to kill one human being transfers to the actual victim and if you believe from the evidence in this case *296 beyond a reasonable doubt that on the day in question, the Defendant, Walter Carpenter, had the deliberate design to kill Jewell Carpenter, but instead, accidentally killed Maurice Carpenter, the killing of Maurice Carpenter is nevertheless murder under the law, unless you believe the Defendant Walter Carpenter acted in necessary self-defense.
Carpenter raises two arguments regarding the jury instruction. First, he contends there was no evidentiary basis to show he intended to kill Jewell. We disagree. According to Jewell’s testimony, when Carpenter retrieved his gun, she was the only other person in the room with him, and Carpenter was staring her directly in the face while loading the gun. Jewell also testified that had she not leaned to the side when Carpenter fired the gun, her face “would have been blown off.” In addition to Jewell’s testimony, Maurice’s last statement provided an evidentiary basis for granting the jury instruction. Immediately before Carpenter fired the gun, Maurice stated, “I know you not [sic] going to shoot Mrs. Jewell, your wife, my mother.” Further, Jewell testified she could feel the “heat” from the bullet on the side of her face. Based on these facts, there was a sufficient evidentiary basis for the granting of the jury instruction on transferred intent.
¶ 17. Carpenter also argues the jury instruction on transferred intent deviated from the indictment and was wholly inconsistent with the State’s burden of proving he killed Maurice with malice aforethought. We disagree. “[Deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent.” Brown, 965 So.2d at 1030 (¶ 28). Based on the evidence, including Jewell’s own testimony, it was possible Carpenter initially intended to shoot Jewell but shot Maurice instead. It was also possible for the jury to conclude that Carpenter intended to shoot and kill Maurice. The granting of the instruction was not inconsistent with the State’s burden of proof.
¶ 18. The State’s instruction on transferred intent fully and fairly instructed the jury as to the applicable law. As such, the trial court did not err in granting the instruction. This issue is without merit.
IV. DUE-PROCESS RIGHTS
¶ 19. Carpenter contends his due-process rights were violated due to the trial court’s four-year delay in ruling on his post-trial motions. Alternatively, he argues his motion for JNOV or, alternatively, a new trial, was improperly denied and his conviction should be reversed. We will address his arguments separately.
A. Delay in ruling on post-trial motions
¶ 20. After sentencing, Carpenter’s trial counsel filed a motion for JNOV or, in the alternative, a new trial. A motion for reasonable bail pending appeal was also filed. These motions were filed on April 18, 2006. Carpenter’s trial counsel failed to seek a hearing on these motions. In 2009, Carpenter obtained new counsel and sought a ruling on the post-trial motions. The trial court denied the motions on May 25, 2010.
¶ 21. Carpenter argues the trial court’s delay was a violation of his due-process rights and warrants a reversal of his conviction. Factors to consider when reviewing appellate-delay claims include “length of delay, the reasons for delay, the defendant’s assertion of his right to appeal, and prejudice to the defendant occasioned by the delay.” Jackson v. State, 910 So.2d 658, 665 (¶ 17) (Miss.Ct.App.2005). “[A] due[-]process violation cannot be established absent a showing of prejudice to the [defendant].” Id. (citation omitted).
*297 ¶ 22. Carpenter has failed to show how the trial court’s delay prejudiced the outcome of his appeal. There is nothing in the record to suggest the delay impaired his grounds for appeal or impeded his ability to defend his case. Furthermore, Carpenter’s trial counsel was responsible for seeking a hearing on his post-trial motions and failed to do so. After realizing his trial counsel’s failure, Carpenter could have taken the initiative and inquired about the ruling on his motions. Carpenter failed to take action until three years later when he obtained new counsel. Based on these facts, we cannot find the trial court’s delay in ruling on the post-trial motions prejudiced Carpenter. Thus, the delay did not constitute a due-process violation. This issue is without merit.
B. Denial of motion for JNOV
¶ 23. Carpenter claims his conviction should be reversed based upon improper denial of his motion for JNOV or, in the alternative, for a new trial. “[The] standard of review for denials of a motion for JNOV and directed verdict is the same.” Reed v. State, 956 So.2d 1110, 1111 (¶ 6) (Miss.Ct.App.2007) (citing Jefferson v. State, 818 So.2d 1099, 1111 (¶30) (Miss.2002)). Both motions challenge the sufficiency of the evidence, and the evidence must be viewed in the light most favorable to the prosecution. Bush, 895 So.2d at 843 (¶ 16). Since we have previously addressed the issue of the denial of Carpenter’s directed verdict, we will only address the issue of his motion for a new trial which examines the weight of the evidence.
¶ 24. “When reviewing a denial of a motion for a new trial based upon the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand woüld sanction an unconscionable injustice.” Id. at 844 (¶ 18). Viewing the evidence in the light most favorable to the verdict, we cannot say that allowing Carpenter’s guilty verdict to stand would sanction an unconscionable injustice. Carpenter admitted to shooting and killing Maurice. Carpenter retrieved and loaded the gun before Maurice entered the room. During this time, Jewell pleaded with Carpenter to “[p]ut [the gun] down.” In spite of this, Carpenter shot and killed Maurice. Furthermore, there was no indication Carpenter acted in self-defense. Nothing in the record suggests Maurice attempted to attack Carpenter before the gun was fired, and Maurice was unarmed during the altercation with Carpenter. This issue is without merit.
¶ 25. THE JUDGMENT OF THE LE-FLORE COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN RESULT ONLY. IRVING, P.J., NOT PARTICIPATING.

. Carpenter claims that due to a head injury he sustained years prior, any blow to the head from Maurice would have been fatal. However, no medical records or corroborating testimony was presented during trial to support this theory.

. We would also find the evidence sufficient to support a depraved-heart conviction. Depraved-heart murder is a killing "done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without premeditated design to effect the death of any particular individual.” Miss.Code Ann. § 97-3-19(l)(b) (Rev.2006). Carpenter fired a gun in a room towards two unarmed individuals. This is sufficient evidence to support a conviction for depraved-heart murder. Readus v. State, 997 So.2d 941, 945 (¶ 15) (Miss.Ct.App.2008).