# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-KA-00549-SCT

*WANDA CLARK*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/08/2008 |
| TRIAL JUDGE: | HON. KENNETH L. THOMAS |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHERYL ANN WEBSTER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: STEPHANIE BRELAND WOOD |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/05/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., DICKINSON AND CHANDLER, JJ.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     After a jury trial, Wanda Clark was convicted of two counts of felonious child abuse and sentenced on each count to eighteen years in the custody of the Mississippi Department of Corrections, with six years suspended, to run concurrently.  *See* Miss. Code Ann. § 97-5-39(2)(a) (Rev. 2006).  On appeal, Clark argues that the trial court erred by: (1) denying her motion for a mistrial based on the court's comments to the victim; (2) admitting the testimony of an employee of the Mississippi Department of Human Services; (3) excluding

defense exhibits; and (4) refusing her "theory of the case" jury instruction. Finding no error, we affirm.

## FACTS

¶2.     On March 29, 2005, Johnnie Graves visited her granddaughter, Hailey,[1] at Clarksdale High School to give her an Easter basket. Graves testified that she had brought the basket to the school because, despite repeated telephone calls and a visit, Graves had been unable to contact anyone at Hailey's home. Graves visited with Hailey alone in the principal's office. She observed that Hailey was sitting with her head down, and Graves asked her what was wrong. At that point, Graves observed a cut on Hailey's ear and abrasions on her arms. Graves directed Hailey to remove her blouse, and then she observed more cuts and bruises on Hailey. Graves called the principal, who contacted the Mississippi Department of Human Services (DHS). DHS launched an investigation. Photographs taken that day of Hailey's body showed cuts, bruises, and scars on her ear, her face, her arm, her legs, and her back.

¶3.     As a result of the investigation, Hailey's father, Kenneth Clark (Kenneth), and her stepmother, Wanda Clark (Clark) (collectively, the Clarks), were charged with two counts each of felonious child abuse based on three incidents: (1) count one charged Kenneth and Clark with breaking Hailey's arm on or about February 13, 2001; (2) count two charged Kenneth and Clark with beating Hailey with an extension cord on or about January 9, 2005; and (3) count three charged Clark with beating Hailey with an extension cord on or about

---

[1] The name of the minor child has been changed to protect her identity.

March 25, 2005. Hailey did not return home and began living with her grandmother on March 29, 2005.

¶4. The Clarks were tried together. At the trial, it was stipulated that Kenneth had been awarded custody of Hailey when she was approximately nine years old. At that time, Kenneth was married to Clark and she had custody of two daughters who were younger than Hailey. Hailey was eighteen years old at the time of the trial. According to Hailey, for the first two years she had lived with the Clarks, things had been good, but after her baby brother was born in 2000, the Clarks began administering severe whippings when she misbehaved or failed to properly execute her household chores. Hailey testified that the injuries shown in the photographs were from whippings with an extension cord. She testified that the Clarks had whipped her other siblings with a belt, but not very severely.

¶5. Although Hailey testified that she was beaten almost daily, she testified specifically about the three specific incidents of abuse charged in the indictment. Hailey testified that, in February 2001, Kenneth and Clark had beaten her and Kenneth had picked her up and dropped her to the floor, breaking her arm. Kenneth had brought her to the hospital, where she received treatment. Hailey said that, to protect her father, she told the doctor she had tripped and fallen. Hailey testified that in another incident on January 9, 2005, both Kenneth and Clark had whipped her with extension cords as punishment for using the phone. She testified that she had missed two days of school due to injuries to her face. Hailey testified that, in the third incident, on March 25, 2005, Clark had accused her of taking candy from her little brother's Easter basket and had whipped her with an extension cord as punishment.

3

¶6.    Hailey also testified about her day-to-day life with the Clarks. Hailey stated that Clark had administered most of the whippings when Kenneth was at work. She testified that food was withheld as punishment. Hailey testified that on one occasion, she was locked in a closet for days. She, and not the other children, had to do chores including housecleaning, mowing the grass, and washing the cars, and any errors yielded whippings from Clark or Kenneth. She stated that she had to walk to and from school every day and was not allowed to accept a ride from anyone, even her grandmother. Although the other children had beds and assigned bedrooms, she slept on the floor of the kitchen, living room, or den, or on a cot her father had bought her for Christmas. She testified that, before March 29, 2005, she never had told anyone about the abuse and instead on several occasions had lied about her living conditions in order to protect her family.

¶7.    Graves testified that, several times, she had seen Hailey walking the three to four miles home from school and had offered her a ride, but Hailey always had declined. George Ellis, the Clarks' neighbor, testified that he had seen Hailey mowing the yard or washing cars one or two times per week, and that she had been the only family member he had seen working outside. Dr. Michael Barr, an orthopedic surgeon, testified that, on February 13, 2001, he had performed surgery to repair an unusually severe fracture of the left proximate humerus, but he had seen no reason to contact DHS. Dr. Peggy Wells of the Childrens' Clinic of Clarksdale testified that she had examined Hailey on March 29, 2005. She testified that Hailey had scars on her face, chest, back, shoulders, legs, back of the arms, and her back, which was completely covered with scars down to the waist. Dr. Wells stated that there were many old scars with other new scars overlapping. Dr. Wells stated that, at a one-week

4

follow-up visit, Hailey had gained nine pounds, had an improved appearance, and seemed more relaxed.

¶8. Christina Shumpert, who worked with DHS as a family protection specialist, testified about her investigation of the allegations of abuse. On the evening of March 29, 2005, she went to Hailey's home with two law enforcement officers and separately interviewed each family member. When Shumpert asked Clark where Hailey slept, Clark produced a cot from under Clark's bed. Clark told Shumpert that Hailey had come home with the injuries, and that a boy had done it. Kenneth also told Shumpert that Hailey had come home with the injuries. Both parents told Shumpert that they spanked with a belt or ruler as punishment.

¶9. In their defense, Clark and Kenneth attempted to show that they did not cause the injuries depicted in the photographs of Hailey. Clark testified that neither she nor Kenneth ever had whipped Hailey with an extension cord. She testified that she had been unaware of Hailey's injuries until her attorney had shown her the photographs. Clark testified that Hailey shared a bedroom with her sisters. Clark testified that Hailey had sneaked out of the house numerous times. For that reason, to keep watch over Hailey, Clark had made her sleep on a cot in the master bedroom. Clark denied that she ever had withheld food or locked Hailey in a closet. Kenneth testified that he had not broken Hailey's arm and had not beaten her with an extension cord. Kenneth testified that he had been unaware of Hailey's injuries until viewing the photographs. He admitted that he had required Hailey to walk home from school and not to accept a ride from anyone for safety purposes. Kenneth testified that punishment for extreme misbehavior by any of the Clarks' children could include whippings with a belt or ruler. Clark testified that she never had beaten Hailey with a belt.

5

¶10. Hailey's two stepsisters testified that they never had seen Clark or Kenneth whip Hailey with an extension cord. One stepsister testified that Hailey had confided in her about having had physical fights with boys; however, she had never seen Hailey with injuries from those fights resembling those shown in the photographs. Several other friends and relatives of the Clarks testified about time they had spent at the Clark home; the Clarks had seemed to love Hailey, and they had witnessed no inappropriate discipline or abuse of Hailey or the other children.

¶11. Based on Hailey's testimony that Kenneth, not Clark, had broken her arm, the trial court granted the State's motion to dismiss count one as to Clark. The jury found Clark guilty of counts two and three, which charged Clark with whipping Hailey with an extension cord on two occasions. The jury acquitted Kenneth of count one, but was unable to reach a verdict as to his guilt on count two. Clark appeals.

> I. WHETHER THE TRIAL COURT ERRED BY REFUSING TO GRANT A MISTRIAL BASED UPON THE COURT'S COMMENTS TO THE ALLEGED VICTIM FOLLOWING HER TESTIMONY.

¶12. After Hailey's testimony, the trial court stated: "You may be excused. Thank you. I think you held up nicely." Hailey replied: "You['re] welcome." Clark and Kenneth jointly moved for a mistrial, arguing that the court's comments were improper because they could have swayed the jury's sympathy toward Hailey. The court explained that the purpose of the comments had been to encourage the child witness, who "had a heavy hand laid on her by each of the two attorneys." The court denied the motion for a mistrial, but granted the prosecution's request for a limiting instruction.

6

¶13.    Before testimony resumed the next day, the trial court gave the following instruction to the jury:

> Let me say to you that on yesterday, near the close of the day, at the end of the testimony of the victim, [Hailey], she testified under rigorous cross-examination, direct examination and redirect examination. And after the court observed her, the court said to her, you did well. That was no intent on the part of the court to comment upon the believability of her testimony, or it was in no way to mean that the court disbelieved her testimony. The court and the attorneys have told you throughout this trial that you are the fact finder, that you're to base your decision on the facts and the law.

The court further instructed the jury that it was not to consider as evidence any statements of the court or the attorneys. Then, the court asked if the jury could lay aside the statement made by the court, and the jury responded affirmatively. The court asked if any individual juror could not lay it aside, and no juror responded. Accordingly, the court proceeded with the rest of the trial.

¶14.    The decision of whether to grant a mistrial lies within the sound discretion of the trial court, and the trial court's refusal to grant a mistrial is reviewable on appeal for abuse of discretion. *Dora v. State*, 986 So. 2d 917, 921 (Miss. 2008). If the trial court determines that error occurred in the proceedings that substantially and irreparably prejudiced the defendant's case, the court must grant a mistrial. *Harrell v. State*, 947 So. 2d 309, 316 (Miss. 2007) (quoting *Parks v. State*, 930 So. 2d 383, 386 (Miss. 2006)). But "[w]here 'serious and irreparable damage' has not resulted, the judge should 'admonish the jury then and there to disregard the improp[riety].'" *Carpenter v. State*, 910 So. 2d 528, 534 (Miss. 2005) (quoting *Roundtree v. State*, 568 So. 2d 1173, 1178 (Miss. 1990)). On review, this Court affords the trial court considerable discretion, because the trial court was best

7

positioned to evaluate the prejudicial effect. ***Harrell***, 947 So. 2d at 316 (quoting ***Parks***, 930 So. 2d at 386).

¶15.   Clark argues that a mistrial was warranted, because the trial court's comments to Hailey had deprived Clark of a fair trial.  Clark argues that the comments violated Canon Three of the Code of Judicial Conduct because they demonstrated that the trial judge was unfair and that he failed to conduct himself in an impartial manner.  However, she cites no authority for her apparent position that this alleged violation of Canon Three warranted a mistrial.[2]   The State counters that the jury was properly admonished to disregard the comments to Hailey, and a mistrial was not warranted, because nothing indicated the comments had caused a decision influenced by prejudice against Clark.  As the State points out, the jury did not accept the entirety of Hailey's testimony, because it acquitted Kenneth of count one, and it was unable to reach a verdict on count two.

¶16.   We find that the trial court did not abuse its discretion by overruling Clark's motion for a mistrial.  "It is a well-settled rule in this State that a finding of mistrial is reserved for those instances where the trial court cannot take any action which would correct improper occurrences inside or outside the courtroom." ***Madere v. State***, 794 So. 2d 200, 214 (Miss. 2001).  Where no serious and irreparable damage was engendered by an improper remark, a curative instruction is deemed sufficient to remove the taint from the minds of the jurors.

---

[2] We observe that Canon Three of the Code of Judicial Conduct directs that [a] judge shall perform judicial duties without regard to bias or prejudice," but the canon also requires judges to be "patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom they deal in their official capacities . . . ." Canon 3(B)(4); Canon 3(B)(5), Miss. Code of Judicial Conduct.

*Martin v. State*, 854 So. 2d 1004, 1009 (Miss. 2003). "Juries are presumed to follow the instructions given to them by the court." *McGilberry v. State*, 741 So. 2d 894, 913 (Miss. 1999). The trial court acknowledged that its comments might have been improper, and it gave a curative instruction (1) stating that the court's comments had not been intended as commentary on the believability of Hailey's testimony and (2) requiring the jury to disregard the comments. Thus, the trial court properly admonished the jury, and this Court presumes the jury followed the admonition. *McGilberry*, 741 So. 2d at 913. There is no indication that the trial court's comments caused any serious or irreparable damage or resulted in a decision influenced by prejudice. Therefore, we find that the curative instruction removed any taint created by the trial court's comments to Hailey, and the trial court properly overruled Clark's motion for a mistrial.

II. WHETHER THE TRIAL COURT SHOULD HAVE SUPPRESSED CERTAIN TESTIMONY BY SHUMPERT.

¶17. Clark makes several arguments pertaining to allegedly improper testimony by Shumpert. Specifically, Clark argues that (1) Shumpert was allowed to bolster the testimony of Hailey, a competent witness; (2) Shumpert gave opinion evidence on confidential matters; (3) Shumpert opined that Hailey was placed into DHS custody "due to the severity of the injuries as a criminal act committed by Wanda Clark[,] which usurped the province of the jury;" and (4) the trial court permitted Shumpert to testify about Clark's statements made to Shumpert during the home investigation and allowed the State to cross-examine Clark using those statements.

¶18. The first three of Clark's arguments are procedurally barred, because Clark did not present them to the trial court by objecting to the aspects of Shumpert's testimony of which she now complains. *Ross v. State*, 954 So. 2d 968, 987 (Miss. 2007). Clark mounted no challenge whatsoever at trial to these aspects of Clark's testimony. The failure to make a contemporaneous objection operates as a waiver of the issue on appeal. "An objection must be made with specificity, and failure to articulate the grounds for objection constitutes a waiver of the alleged error." *Id.* Clark did raise these arguments in her motion for a new trial. However, "raising objections in a motion for new trial which should have been made at trial has never been thought to cure the failure to object at the proper time." *Id.* (quoting *Smith v. State*, 797 So. 2d 854, 856 (Miss. 2001)). "It is axiomatic that a litigant is required to make a timely objection." *Smith*, 797 So. 2d at 856.

¶19. Clark's remaining argument is that the trial court should not have allowed Shumpert to testify about Clark's statements during the home investigation, and should not have allowed the State to cross-examine Clark using those statements. Clark contends that the statements were elicited in violation of her Fifth-Amendment rights because she was not given *Miranda*[3] warnings prior to making the statements. She further argues that the statements should have been excluded because they were the fruit of an unlawful search in violation of the Fourth Amendment; she contends that two law enforcement officers accompanied Shumpert to Clark's residence, and they had no search warrant, exigent circumstances, or any other exception that would have permitted their entry into her home.

---

[3] *See **Miranda v. Arizona***, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

¶20. Before trial, Clark moved to suppress any statements Clark made to Shumpert during the home investigation.[4] In support of the motion, she argued that Shumpert had a responsibility to advise Clark of her *Miranda* rights because, as the DHS investigator, Shumpert knew or should have known that charges would result from the investigation. Clark's arguments were limited to her claim that her statements were elicited in violation of the Fifth Amendment; she claimed no violation of her Fourth-Amendment rights. Because Clark did not raise her Fourth-Amendment claims before the trial court, these arguments are barred from appellate consideration. *Ross*, 954 So. 2d at 987.

¶21. We proceed to Clark's argument that her statements to Shumpert were inadmissible because she was not given *Miranda* warnings. At the pretrial hearing, it was established that two law enforcement officers accompanied Shumpert to Clark's home for safety purposes during the investigation. Although Clark was not placed under arrest, Shumpert told Clark that she had to answer her questions or Clark would not be permitted to see Hailey. Clark argued that these circumstances required that Clark be given *Miranda* warnings before talking to Shumpert. The trial court found that Clark was not under imminent arrest at the time of the home investigation; she was arrested approximately two weeks later. The trial court held that Clark's statements would not be suppressed unless Clark produced authority

---

[4] Clark filed a motion to suppress Shumpert's testimony, but no copy of the motion is in the record. The contents of the motion are unknown. It is the appellant's duty to compile an appellate record that sufficiently reflects the trial court proceedings that form the factual basis of the arguments on appeal. *Byrom v. State*, 863 So. 2d 836, 853 (Miss. 2003). As Clark failed to assure that the record included a copy of the motion to suppress, we limit consideration of this issue to Clark's arguments at the pretrial hearing.

holding that a statement by an alleged abuser during a DHS investigation should be suppressed. Clark produced no authority, and Shumpert testified to Clark's statements.

¶22. "This Court will reverse a trial court's denial of a motion to suppress only if the ruling is manifest error or contrary to the overwhelming weight of the evidence." *Barnes v. State*, 30 So. 3d 313 (Miss. 2010). Under *Miranda*, the accused must be warned of the right to remain silent and the right to an attorney before any custodial interrogation may occur. *Id.* (citing *Miranda*, 384 U.S. at 479). If the accused invokes the right to remain silent, the interrogation must cease. "To be subject to custodial interrogation, one must be both in custody and undergoing interrogation." *Wilson v. State*, 936 So. 2d 357, 362 (Miss. 2006). A suspect is in custody if a reasonable person in the circumstances would have believed the right to leave freely had been restricted. *Culp v. State*, 933 So. 2d 264, 273 (Miss. 2005). To be "in custody," the suspect must reasonably feel he or she is going to jail, not merely being temporarily detained. *Id.* at 272.

¶23. The determination of whether a suspect was under custodial interrogation is based on the totality of the circumstances. *Drake v. State*, 800 So. 2d 508, 513 (Miss. 2001). "The vital point is whether, examining all the circumstances, the defendant was deprived of his freedom of action in any significant manner, and the defendant was aware of such restraint." *Roberts v. State*, 301 So. 2d at 859, 863 (Miss. 1974). "In a non-custodial setting where interrogation is investigatory in nature . . . , *Miranda* warnings are not required in order that a defendant's statements be admissible." *Porter v. State*, 616 So. 2d 899, 907 (Miss. 1993). The fact that there is a mere possibility of incrimination does not mean that a custodial interrogation occurred. *Drake*, 800 So. 2d at 514. In *Roberts*, the Court held that a person

12

was not subject to custodial interrogation when the sheriff questioned her in her front yard, she was not under arrest, and she was not aware of any restraint on her freedom. *Roberts*, 301 So. 2d at 863.

¶24. Clark argues that she was subject to custodial interrogation because Shumpert was accompanied by two law enforcement officers. Mississippi law authorizes DHS to request the accompaniment of law enforcement officers during an investigation:

> In any investigation by the Department of Human Services of a report made under Section 43-21-101 et seq. of the abuse or neglect of a child as defined in Section 43-21-105, the department may request the appropriate law enforcement officer with jurisdiction to accompany the department in its investigation, and in such cases the law enforcement officer shall comply with such request.

Miss. Code Ann. § 43-27-113 (Rev. 2009). Clark was questioned by Shumpert, not the law enforcement officers who accompanied her. This Court has held that questioning by a social worker did not constitute custodial interrogation, noting that a social worker is not a law enforcement officer and has no power to arrest, although the social worker was under a duty to investigate child abuse and report it to law enforcement officials. *Hennington v. State*, 702 So. 2d 403, 409 (Miss. 1997). During the questioning, Clark was not under arrest; she was in her own home and free to terminate the interview. "[A]bsent an arrest, interrogation in the familiar surroundings of one's own home is generally not deemed custodial." *U.S. v. Plugh*, 522 F. Supp. 2d 481, 491 (W.D.N.Y. 2007) (citing *United States v. Newton*, 369 F.3d 659, 675 (2d Cir. 2004)). Nothing in the testimony of Clark or Shumpert indicated that Clark believed that she was going to jail rather than temporarily being detained. The Court finds that, considering the totality of the circumstances, Clark was not subjected to custodial

13

interrogation; thus, no ***Miranda*** warnings were required, and her statements to Shumpert were admissible.

>   III. WHETHER THE TRIAL COURT ERRED BY EXCLUDING EXHIBITS D-3, D-4, D-5, AND D-6 AND PROHIBITING THE CROSS-EXAMINATION OF HAILEY CONCERNING THESE EXHIBITS.

¶25.    Clark sought to cross-examine Hailey using a document offered into evidence and marked for identification as Exhibit D-3. Exhibit D-3 was a conduct report which stated that Hailey had engaged in sexual relations with a boy in the bathroom of a fast-food restaurant on June 23, 2005. The State argued that this conduct was irrelevant because it had occurred after the alleged abuse. The trial court accepted the proffer of Exhibit D-3 but prohibited the questioning of Hailey about the intimate act, and her testimony resumed. The trial court gave Clark an opportunity to present authority holding that a child's subsequent sexual activity is admissible in a child-abuse case, but Clark produced no such authority.

¶26.    Subsequently, Clark proffered Exhibits D-4, D-5, and D-6. Exhibit D-4 was another conduct report stating that, on February 23, 2005, Hailey had shoved her desk at another student and had used profanity. Exhibit D-5 was a student-referral form dated April 19, 2004, in which a student had reported that Hailey's parents did not treat her right, and in which the principal stated that Hailey had denied any mistreatment when confronted with the student report. Exhibit D-6 was a written narrative dated February 23, 2005, from someone who had witnessed Hailey engage in sexual activity with a boy at a fast-food restaurant.[5]

---

[5] Exhibit D-3 and Exhibit D-6 appear to describe two different instances of sex in the fast-food restaurant's bathroom.

¶27. Clark proffered Exhibit D-4 but did not obtain a ruling on why it was excluded from evidence. The trial court permitted Clark to cross-examine Hailey about the incidents described in the student referral form, Exhibit D-5. At that time, Clark stated that Exhibit D-5 was not being offered as evidence. After the cross-examination, Clark proffered Exhibit D-5. Clark also proffered the narrative, Exhibit D-6, to show Hailey had behavioral problems leading up to the discovery of the abuse. The State argued that it was irrelevant and inflammatory, and its admission would violate the best-evidence rule. The court excluded it from evidence. Clark's argument regarding the admissibility of all four of these exhibits was that they were probative of Hailey's credibility, and they tended to show that Hailey could have received the injuries from someone other than Clark.

¶28. Clark argues that the trial court's exclusion of these exhibits prevented her from presenting her theory of the case, which was that Hailey was injured by someone other than Clark "because (1) [Hailey] had come home with bruises on her face before, (2) [Hailey] had fought with a previous boyfriend, (3) [Hailey] was known to get into fights at school, and (4) Clark didn't do it." She also argues that her right of cross-examination was violated because she was unable to question Hailey about the events described in the exhibits.

¶29. The standard of review applicable to the admission or exclusion of evidence is abuse of discretion. *Evans v. State*, 25 So. 3d 1054, 1057 (Miss. 2010). In a criminal case, we will affirm the trial court's exercise of discretion unless the ruling resulted in prejudice to the accused. *Jones v. State*, 918 So. 2d 1220, 1223 (Miss. 2005). The trial court has broad discretion concerning the scope of cross-examination. *Dedeaux v. State*, 519 So. 2d 886, 890

15

(Miss. 1988). Although wide latitude must be afforded during cross-examination, any matters probed on cross-examination must be relevant. *Id.*; Miss. R. Evid. 611 cmt.

¶30. "A criminal defendant is entitled to present his defense to the finder of fact, and it is fundamentally unfair to deny the jury the opportunity to consider the defendant's defense where there is testimony to support the theory." *Terry v. State*, 718 So. 2d 1115, 1121 (Miss. 1998). However, all evidence admitted in support of the defendant's theory of the case must comport with the Mississippi Rules of Evidence. *Id.* Mississippi Rule of Evidence 401 provides that "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant evidence. Miss. R. Evid. 401. "The relevancy and admissibility of evidence are largely within the discretion of the trial court . . . ." *Terry*, 718 So. 2d at 1122.

¶31. We find that the Exhibits D-3, D-4, and D-6 were not relevant. Therefore, the trial court properly excluded them from evidence and restricted Clark from cross-examination concerning them. The trial court properly determined that the documentation of Hailey's sexual conduct and her behavior at school was not probative of whether Clark or someone else had abused her. Indeed, nothing in these exhibits could have supported a reasonable inference that Hailey was injured by someone other than Clark. Admitting the exhibits would have invited the jury to speculate from the records of Hailey's sexual conduct and a quarrel at school that she had been beaten severely by a boyfriend or schoolmate. We note that Clark's defense theory was supported by testimony that Hailey had physical fights with a boyfriend and had gotten into fights at school.

16

¶32.　As previously noted, Clark did cross-examine Hailey on the substance of Exhibit D-5, but that exhibit was not admitted into evidence.　In Exhibit D-5, the principal stated that Hailey had denied being mistreated and that she claimed to enjoy mowing the grass, walking, and washing the car, and that she ate a lot but could not gain weight.　During the cross-examination, Clark asked Hailey whether she had made those representations to the principal; Hailey stated that she did not remember the conversation.　The trial court did not allow Clark to read the principal's statements to Hailey because Exhibit D-5 was not in evidence.　Then, the following occurred:

> Q. (By Mr. Walls continued.) Well, do you, do you not, do you deny that you ever told Ms. McBride that there was just some upset people trying to mess with you and your family, your mom and dad?

> A. I don't remember talking to Ms. McBride period about that.

> Q. So isn't that, so if Ms. McBride filled out a student referral form relating those things that you just said you don't remember that happening?

> A. I don't remember.

¶33.　Hailey's statements to the principal were inconsistent with her trial testimony about her living conditions.　Mississippi Rule of Evidence 613 provides:

> (a) Examining Witness Concerning Prior Statement. In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel.

> (b) Extrinsic Evidence of Prior Inconsistent Statement of Witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

17

The proper predicate for a prior inconsistent statement "requires the witness be asked 'whether or not on a specific date, at a specific place, and in the presence of specific persons, the witness made a particular statement.'" ***Bush v. State***, 667 So. 2d 26, 28 (Miss. 1996). If the witness denies or cannot recollect having made the prior statement, or otherwise fails to acknowledge the prior statement, then extrinsic evidence of the statement is admissible. ***Harrison v. State***, 534 So. 2d 175, 180 (Miss. 1988).

¶34.   After laying a predicate, Clark questioned Hailey about her prior inconsistent statements to the principal.  Hailey testified that she did not recall having made the statements.  At that point, extrinsic evidence of her prior inconsistent statements was admissible under Rule 613(b).  ***Id.***  However, the trial court did not admit the school referral form into evidence.  It is clear that this error did not prejudice Clark.  Hailey previously had testified on cross-examination that, until the time that her grandmother had discovered her injuries in March 2005, she always had lied about the true nature of her living conditions. She also testified extensively about having written a false letter to the school counselor in which she had denied any abuse and had praised Clark's parenting skills.  Hailey explained that she had lied to protect her family.  Substantial testimony was before the jury concerning prior inconsistent statements by Hailey.  Therefore, Exhibit D-5 was cumulative of other evidence.  As Clark suffered no prejudice from the failure to admit the extrinsic evidence, the Court finds that no reversible error occurred.

> IV.  WHETHER THE TRIAL COURT ERRED BY DENYING DEFENSE
> INSTRUCTION D-7.

18

¶35. Clark argues that the trial court erred by refusing Jury Instruction D-7. The instruction stated:

> The Court instructs the jury that you must be convinced by the evidence presented beyond a reasonable doubt that the alleged abuse of [Hailey] was inflicted and caused by Wanda Clark on the dates as charged in the indictment, and if you can determine from the evidence that the alleged abuse of [Hailey] could have been or was caused by something else other than the intentional acts of Wanda Clark then you shall find Wanda Clark not guilty of the charges against her.

Clark contends that she was entitled to this instruction, because it was the only jury instruction that articulated her theory of the case.

¶36. This Court reads jury instructions as a whole to determine whether the jury was fully and fairly instructed according to the applicable law. *Davis v. State,* 18 So. 3d 842, 847 (Miss. 2009). "In other words, if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." *Id.* An accused has a fundamental right to have her theory of the case presented to the jury, but the right is not absolute. *Id.* "A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." *Spires v. State*, 10 So. 3d 477, 483 (Miss. 2009) (quoting *Heidel v. State*, 587 So. 2d 835, 842 (Miss. 1991)).

¶37. Clark argues that the jury instructions were deficient without instruction D-7. We find that any need for instruction D-7 was obviated by the elements instruction, which stated, in part:

19

The Defendant, WANDA CLARK, has been charged by a multi-count indictment with two counts of Felonious Abuse/Battery of a Child.

In Count II, if you find from the evidence in this case beyond a reasonable doubt that:
(1) on or about January 9, 2005 in Coahoma County, Mississippi the Defendant, WANDA CLARK, did individually or while aiding and abetting another,
(2) unlawfully, willfully, and feloniously whip, strike, or otherwise abuse or mutilate a child, [Hailey],
(3) who was fifteen (15) years of age,
(4) causing bodily injury by beating [Hailey] with an extension cord about the arms, legs, back and torso, and
(5) said abuse was not in self-defense or to prevent bodily harm to a third party,
then you shall find the Defendant, WANDA CLARK, guilty in Count II of Felonious Abuse/Battery of a Child.
If the State failed to prove any one or more of the above elements beyond a reasonable doubt, then you shall find the defendant not guilty in Count II.

The instruction recited identical elements pertaining to Count III. The elements instruction required the jury to find beyond a reasonable doubt that Clark had caused the injuries. Therefore, the instruction fully informed the jury that, if it believed someone else had caused the injuries, or if it did not believe beyond a reasonable doubt that Clark had caused the injuries, then it was to acquit. The Court finds that the trial court did not err by refusing instruction D-7.

**CONCLUSION**

¶38.  The Court finds that no mistrial was warranted based on the trial court's comments to Hailey. We find that Shumpert's testimony was admissible. We further find that the trial court's exclusion of the documents proffered by Clark was not an abuse of discretion. Finally, we find that the jury was properly instructed, and the trial court properly refused

20

Clark's "theory of the case" instruction. Therefore, we affirm Clark's conviction and sentence.

¶39. **COUNT II: CONVICTION OF FELONIOUS ABUSE/BATTERY OF A CHILD AND SENTENCE OF EIGHTEEN (18) YEARS, WITH SIX (6) YEARS SUSPENDED, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT III: CONVICTION OF FELONIOUS ABUSE/BATTERY OF A CHILD AND SENTENCE OF EIGHTEEN (18) YEARS, WITH SIX (6) YEARS SUSPENDED, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES IN COUNTS II AND III SHALL RUN CONCURRENTLY WITH EACH OTHER AND CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH, LAMAR, KITCHENS AND PIERCE, JJ., CONCUR.**