389 So.2d 1389 (1980)
Billy Frank GEORGE
v.
Brenda S. GEORGE.
No. 52177.
Supreme Court of Mississippi.
November 12, 1980.
Eugene A. Perrier, Travis T. Vance, Jr., Conerly & Vance, Vicksburg, for appellant.
Lee Davis Thames, H.M. Yoste, Jr., Ramsey, Bodron, Thames & Robinson, Vicksburg, for appellee.
Before PATTERSON, C.J., and WALKER and BROOM, JJ.
WALKER, Justice, for the Court:
Billy Frank George appeals from a decree of the Chancery Court of Warren County granting Brenda S. George a divorce and awarding a lump sum of $10,000 as alimony, and the exclusive use and possession of their home. He assigns as error the following:
(1) The lower court erred in granting a divorce because there was no evidence that the parties had consummated a common-law marriage in Georgia; and
*1390 (2) The amount of alimony is grossly excessive and unsupported by the facts.
The record shows that the parties were lawfully married on September 4, 1970, and were lawfully divorced by the Chancery Court of Jackson County on December 6, 1972. The appellant, a pipe fitter whose work requires him to travel extensively from job-to-job, subsequently moved to the State of Georgia. On July 23, 1973, the appellee joined him in Georgia, where they began to live together. It is undisputed that the appellee continued to live with Mr. George until he left her in August of 1977. During this time they lived in various states, including Georgia, Alabama, Louisiana and Mississippi. After Mr. George left the appellee, he ceremonially married another woman on September 12, 1977. The appellee filed for divorce on January 24, 1979, and the divorce was granted on July 17, 1979. Mr. George appeals with supersedeas from that decree.
The appellant maintains that the evidence does not support the lower court's finding that the parties had consummated a common-law marriage in Georgia. However, a review of the record indicates there was abundant evidence to support this finding. It is undisputed that Brenda lived with Billy George for the last five or six months in Georgia in 1973. Brenda George testified that after she joined the appellant in Georgia they slept together, ate together, traveled together, and acted in all ways as husband and wife. She testified that he told her, "Bren, we are man and wife." Brenda's mother, Mrs. Donna Shepherd, testified that the appellant often discussed with her the possibility of remarriage and reconciliation with Brenda. She testified that she visited them in their home in Georgia, and during one of these visits the appellant told her he had remarried her daughter. At that time they were holding themselves out to the public as man and wife and were acting just like any man and wife. Brenda's brother, Jerry Shepherd, testified that he stayed with Billy and Brenda George about a month while they lived in Georgia. During this time, he testified, Billy always called Brenda "my wife," they shared the same bedroom, ate together, slept together, and traveled together. All this evidence supports the chancellor's finding that a valid common-law marriage was contracted in the State of Georgia.
Although common-law marriages are no longer recognized in this State, Mississippi Code Annotated section 93-1-15 (1972), they are recognized in Georgia. Brown v. Brown, 234 Ga. 300, 215 So.2d 671 (1975). Further, if a valid common-law marriage was celebrated in Georgia, it will be recognized in this State. Walker v. Matthews, 191 Miss. 489, 3 So.2d 820 (1941); Bunkley & Morse, Amis on Divorce and Separation in Mississippi § 17.01(1) (1957).
The essential elements of marriage in Georgia are enumerated in Georgia Code Annotated section 53-101, as follows:
(1) The parties must be able to contract;
(2) There must be an actual contract; and
(3) There must be consummation according to law.
Concerning the first element, it is undisputed that both parties had the capacity to enter into a valid marriage contract in 1973. Similarly, there was more than sufficient evidence on the third element, consummation of the marriage; i.e., cohabitation as husband and wife. Mr. George does not dispute the sufficiency of the evidence on either of these elements. His main contention is that there was no actual contract of marriage.
This was a question of fact for the chancellor to decide, based on the conflicting testimony of the parties. Brenda testified that the appellant told her, "Bren, we are man and wife." Appellant testified that he asked her to remarry him ceremonially, and she told him, "No, I will not marry you."
This conflict in testimony is not surprising. Where the existence of a common-law marriage is in dispute between the parties, there will often be one party testifying to the contract and one party testifying that such a contract does not exist. In this case the chancellor had before him, in addition to the appellee's testimony and that of her mother and brother, certain documents executed by the appellant in which he referred *1391 to Brenda as his wife. These included a warranty deed which conveyed property to the parties as husband and wife, dated May 9, 1975; a promissory note and deed of trust given by the parties as husband and wife, dated July 1, 1976; a warranty deed and deed of trust by which they conveyed property as husband and wife, dated October 24, 1974; a life insurance policy signed by Mr. George listing as beneficiary Brenda George, wife, dated April 28, 1975; and an application for membership in a power association signed by the appellant, listing Brenda as his spouse, dated August 22, 1977. This evidence tends to show that Billy George held Brenda out to the public as his wife during the time they lived together in Mississippi. Standing alone, it would not prove that they entered into a common-law marriage in Georgia. But considered in conjunction with the testimony of Brenda, her mother and her brother, it clearly supports the chancellor's finding that a valid contract of marriage existed.
The appellant has set forth several contentions in his brief which may be joined together as one single argument. He argues that the parties were only temporary residents of Georgia in 1973, and could not have consummated a common-law marriage as long as their fixed domicile remained in Mississippi. Although the appellant puts forth a plausible argument, the question has already been decided adversely to him in Walker v. Matthews, supra. The appellant's argument ignores the basic right of all persons to choose their place of marriage. As long as they follow the requirements of the law of the state of celebration, the marriage is valid in most jurisdictions. See generally, Restatement of Law, Conflicts of Laws § 129; 52 Am.Jur.2d Marriages § 86; 55 C.J.S. Marriages § 4b.
The appellant next argues that the award of alimony was grossly excessive and unsupported by the facts. The lower court awarded the appellee alimony in the sum of $10,000, together with the added alimony in the form of the exclusive use and occupancy of their residence in Jackson County, Mississippi.
We have carefully reviewed the record in this case, and are unable to say that the amount of alimony awarded represents an abuse of judicial discretion.
Therefore, for the reasons stated above, it is our decision that the chancellor's decree should be, and hereby is, affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ. and SUGG, BROOM, LEE, BOWLING and COFER, JJ., concur.