# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01004-COA

**AARON LYONS A/K/A AARON LADANIEL LYONS A/K/A ARRON L. LYONS A/K/A AARON DANIEL LYONS**                                  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/08/2015 |
| TRIAL JUDGE: | HON. DAVID H. STRONG JR. |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KAYLYN HAVRILLA MCCLINTON |
| DISTRICT ATTORNEY: | DEE BATES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, MANSLAUGHTER, AND SENTENCED TO TWENTY YEARS; AND COUNT II, ARMED ROBBERY, AND SENTENCED TO THIRTY-FIVE YEARS, WITH FIVE YEARS SUSPENDED, FOLLOWED BY FIVE YEARS OF POST-RELEASE SUPERVISION, WITH THE SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A $5,000 FINE |
| DISPOSITION: | AFFIRMED: 04/18/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.    Aaron Lyons was convicted of one count of manslaughter in violation of Mississippi

Code Annotated section 97-3-25 (Rev. 2014) and one count of armed robbery in violation of Mississippi Code Annotated section 97-3-79 (Rev. 2014). Lyons appeals his conviction. This Court finds no error and affirms.

## FACTS AND PROCEDURAL HISTORY

¶2. Around 4:45 a.m. on January 16, 2004, a customer discovered the lifeless body of John Deere outside of the Pik & Pak convenience store, which Deere owned, in Brookhaven, Mississippi. Deere was robbed at gunpoint and shot three times. Shortly after Deere's body was discovered, a volunteer firefighter from the Summit Fire Department responded to a small roadside grassfire. The fireman discovered various items alongside the road, including a small metal cash box where the fire originated.

¶3. Lincoln County investigators soon arrived on the scene to inspect the area and seize evidence. Deere's widow later identified the cash box as belonging to her deceased husband. Investigators also collected DNA samples from the items found near the fire, but the DNA did not match any known person.

¶4. In 2013, the Lincoln County Sheriff's Department received a DNA sample belonging to Lyons. Lyons's DNA profile matched a sample recovered from a pair of black FUBU jeans discovered at the scene of the fire. Investigators then determined that Lyons lived in Brookhaven at the time of the crime with his then girlfriend, Lavatrus Harris. On September 3, 2014, Lyons was indicted in the Circuit Court of Lincoln County on charges of murder, armed robbery, and conspiracy to commit armed robbery.

¶5. At trial, Sonya Ewell testified that at some point early in their relationship, Lyons told

2

her of the robbery and murder that he and Harris committed together in Brookhaven in 2004. Ewell testified that on a trip in December 2011 from Humble, Texas, to Brookhaven to visit family, Lyons drove her and his cousin past the scene of the crime and gestured at the gas station and stated, "that's where it happened."

¶6. Lyons sought to exclude Ewell's testimony by claiming Ewell was his common-law wife, and the spousal privilege precluded her testimony. Lyons also argued that Ewell was not a competent witness and was allowed to testify in violation of Mississippi Rule of Evidence 601. The trial court ruled that Lyons's admission to Ewell occurred before they allegedly entered into a common-law marriage, which meant the privilege did not apply, and the presence of Lyons's cousin in the vehicle removed the conversation from privilege even if Lyons could invoke the spousal privilege.

¶7. After a jury trial from June 2 through June 4, 2015, a jury convicted Lyons of manslaughter and armed robbery. On June 11, 2015, Lyons filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. On June 18, 2015, the trial court denied the motion. Lyons now appeals.

ANALYSIS

¶8. Lyons argues on appeal, through his appellant's brief and supplemental brief, that: (1) the trial court erred in allowing Lyons's alleged former common-law wife to testify in violation of Mississippi Rules of Evidence 504 and 601(a); (2) the verdicts were contrary to the weight of the evidence; (3) the State violated Lyons's right to due process by not disclosing a copy of the official paperwork from the DNA test results on the purple cloth; (4)

3

the State created a materially false impression of the evidence; (5) his right to a fair trial was violated when a State's witness used a cell phone while on the stand; (6) his right to a fair trial was violated when the trial court allowed a picture of the victim to remain displayed to the jury during closing arguments; (7) the trial court erred in failing to grant a mistrial; (8) he received ineffective assistance of counsel; (9) the trial court erred in denying jury instruction D-10; and (10) cumulative error.

> I.     *The trial court did not err in allowing Lyons's alleged former common-law wife to testify.*

¶9.     Lyons first argues that Ewell's testimony was inadmissible. Specifically, Lyons claims the court erred when it found the spousal privilege in Mississippi Rule of Evidence 504 did not preclude Ewell's testimony and that Ewell was a competent witness under Mississippi Rule of Evidence 601.

¶10.    "The standard of review for either the admission or exclusion of evidence is abuse of discretion." *Vaughn v. State*, 189 So. 3d 650, 652 (¶9) (Miss. Ct. App. 2015) (citation omitted). "In any proceeding, civil or criminal, a person has a privilege to prevent that person's spouse, or former spouse, from testifying as to any confidential communication between that person and that person's spouse." M.R.E. 504(b). Lyons has the burden of demonstrating reversible error on the part of the trial court in allowing Ewell's testimony. *See Nicolaou v. State*, 612 So. 2d 1080, 1084 (Miss. 1992) (disagreed with on other grounds).

¶11.    Mississippi law does not recognize a common-law marriage. *George v. George*, 389 So. 2d 1389, 1390 (Miss. 1980). Texas does. *Farrell v. Farrell*, 459 S.W.3d 114, 117 (Tex. App. 2015). Therefore, Mississippi will still recognize common-law marriages that are valid

4

in other states. *George*, 389 So. 2d at 1390. Thus, we must consider whether Lyons and Harris had a valid common-law marriage in Texas.

¶12.    Texas law dictates that "an informal or common-law marriage exists in Texas if the parties (1) agreed to be married, (2) lived together in Texas as husband and wife after the agreement, and (3) there presented to others that they were married." *Small v. McMaster*, 352 S.W.3d 280, 282 (Tex. App. 2011). Prior to the alleged crime, Lyons lived in Humble, Texas. There, he started and maintained a relationship with Ewell from November 2011 until February 2014. They did not marry. However, Ewell testified that sometimes she and Lyons referred to themselves as husband and wife. Ewell also testified that she and Lyons learned they could be considered common-law husband and wife around 2013.

¶13.    Based on this testimony, the court could have found that Lyons and Ewell had met the first two requirements for a Texas common-law marriage. As to the third requirement, Ewell testified that she introduced Lyons to friends and family as her "husband," her "ex-boyfriend," and her "ex-husband," independently and with great frequency. She testified that the nature of their relationship and the way it was labeled shifted constantly with changing circumstances in their lives.

¶14.    In a similar case in Texas where a common-law marriage was in dispute, the Texas Court of Appeals held that "[w]hether the evidence is sufficient to establish that a couple held themselves out as husband and wife turns on whether the couple had a reputation in the community for being married." *Small*, 352 S.W.3d at 285 (citing *Eris v. Phares*, 39 S.W.3d 708, 715 (Tex. App. 2001)). Proving a reputation for being married requires evidence that

5

the couple "consistently conducted themselves as husband and wife in the public eye or that the community viewed them as married." *Id.* (citation omitted). Further, the "occasional introductions as husband and wife do not establish the element of" common-law marriage of the man and woman holding themselves out as husband and wife. *Winfield v. Renfro*, 821 S.W.2d 640, 651 (Tex. App. 1991) (citations omitted).

¶15. We find that there was evidence that Lyons and Ewell failed to consistently hold themselves out as husband and wife. Therefore, no common-law marriage existed under Texas law, and Ewell's testimony was outside the scope of Mississippi's spousal privilege. We find no error in the admission of Ewell's testimony.

¶16. Further, Even if Lyons and Ewell proved a valid Texas common-law marriage, Lyons's statement to Ewell about the robbery and murder would not be protected by the Rule 504 privilege because the statement was made before the alleged "marriage" began. Ewell also testified that she and Lyon did not enter into a relationship until November 2011. Although she could not remember the exact date of Lyons's confession, she knew it was "early on in the relationship" and before their trip to Brookhaven in December of 2011. Ewell also testified that it was "quite possible that [the confession] occurred even before [Lyons] moved in with [her]." In fact, the trial court asked whether it was possible that the confession was made to her while they were not common-law husband and wife, Ewell replied, "Correct, it's very possible." Therefore, Rule 504 did not protect the statement that occurred before the formation of the alleged common-law marriage.

¶17. Moreover, there was also evidence that Lyons's cousin was in the car while Lyons

6

drove Ewell around Brookhaven. Rule 504 protects statements made by one spouse to another that are intended to remain confidential. *Martin v. State*, 773 So. 2d 415, 417 (¶5) (Miss. 2000). The presence of a third party negates the intent for the statement to remain confidential between husband and wife. *Id.* Thus, the statement made by Lyons to Ewell in front of a third party was not confidential. *See Carpenter v. State*, 102 So. 3d 290, 294 (¶8) (Miss. Ct. App. 2012) (spousal immunity does not apply to communications between spouses made in the presence of a third party).

¶18. For these reasons, we find no reversible error in Ewell's testimony.

> II. *Whether the verdicts were contrary to the weight of the evidence.*

¶19. Lyons next challenges the trial court's denial of his motion for a new trial. "This Court reviews a trial court's denial of a motion for a new trial based on an abuse-of-discretion standard." *Mitchum v. State*, 164 So. 3d 477, 482 (¶19) (Miss. Ct. App. 2014) (citing *Butler v. State*, 102 So. 3d 260, 268 (¶23) (Miss. 2012)). When we review "a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005) (citation omitted). With this standard in mind, we must weigh the evidence in the light most favorable to the verdict. *Id.*

¶20. Lyons claims that the jury's verdicts were contrary to the fact that Harris and Ewell both had motives and colluded to frame him, another person admitted to committing the crimes, and the State never proved that he wore or owned the black FUBU jeans that were

found at the scene of the roadside fire with the burning cash box belonging to Deere.

¶21.     Lyons argues that Harris and Ewell attempted to frame him for the crimes because of their mutual disdain for him.  He contends they used information about the crimes that could have come from news reports.

¶22.     In addition to Ewell's testimony discussed above, Harris testified that she was with Lyons on the day of the crime.  After signing an immunity agreement, Harris testified that she helped Lyons scout out the location of the crime.  She also helped obtain a stolen car and placed the car in position for Lyons to flee after executing the robbery.  Harris also stated that on the day of the crime, shortly after Lyons left the stolen car and headed toward the Pik & Pak, she heard three gunshots and saw Lyons running back to the car carrying a small box. Harris testified that after Lyons got back into the car, he was crying and demanded that Harris drive back to Lyons's truck so as not to "get [him] caught."

¶23.     Harris testified that she returned the stolen car after Lyons wiped it down with a grey or purple fabric – similar to one of the items recovered at the scene of the fire – and got back into Lyons's eighteen-wheeler work truck.  Allegedly, Lyons ordered Harris into the sleeping compartment of the truck and closed the curtain.  Though Harris could not tell where Lyons drove, she testified that she thought it was the interstate, judging by the number of cars she heard passing the truck.  Harris then testified that the truck stopped and Lyons got out of the truck and was gone for some time.  Harris never saw the small cash box again.  Lyons returned with threats to Harris while pointing a revolver at her head: "[Y]ou ever tell on me, you know, I'll kill your mama, your daddy and your brother."  Harris asked Lyons what he

had done, to which he responded, "I told the [expletive] to stop looking at me . . . . [H]e wouldn't stop looking at me . . . . I told him, 'don't turn around.'" Lyons, however, disputes the accuracy of Harris's testimony.

¶24. Jurors have the duty to resolve any conflicts in witness testimony. *Boone v. State*, 973 So. 2d 237, 243 (¶22) (Miss. 2008) (citations omitted). Also, jurors are permitted to "believe or disbelieve, accept or reject, the utterances of any witness." *Id.* "A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution." *Id.* The fair-minded jury's decision to believe Harris and Ewell's testimonies, which they had an equal right not to believe, was a reasonable decision.

¶25. Lyons also argues that Lincoln County investigators initially arrested and indicted Kenneth Baggett for the crimes when a witness, Will Hutson, stated that he was with Baggett when he murdered Deere. However, Dewitt Bates, the district attorney at the time of the murder, testified that the case against Baggett was ultimately dismissed for a serious lack of physical evidence connecting him to the crime. Thus, there is insufficient evidence that Baggett, and not Lyons, committed the crimes.

¶26. In addition, there was physical evidence that connected Lyons to the crime. Although the State never technically proved that the FUBU jeans belonged to Lyons or that he ever wore them, Lyons's DNA was found on the jeans that were found next to the stolen cash box that belonged to Deere. There was the cloth that Harris testified that Lyons used to wipe

9

down the stolen car used for the crimes.

¶27. Because we find that the verdict is not so contrary to the weight of the evidence as to create an unconscionable injustice, this Court must affirm and uphold the jury's verdict. We find no merit to this issue.

> III. *Whether Lyons's right to due process was violated by not disclosing a copy of the official paperwork from testing the purple cloth from the DNA lab.*

¶28. In his supplemental brief, Lyons argues the trial court committed error when it allowed the State to present DNA evidence from an untimely disclosed DNA report. Again, "[t]he standard of review of a trial court's admission of evidence is abuse of discretion." *Moore v. State*, 911 So. 2d 1037, 1038 (¶3) (Miss. Ct. App. 2005) (citation omitted). "The trial judge is empowered with the discretion to consider and to decide what evidence is admissible, and unless this judicial discretion is so abused as to be prejudicial to the accused, then the ruling of the lower court must be affirmed." *Id.* (quoting *Francis v. State*, 791 So. 2d 904, 907 (¶7) (Miss. Ct. App. 2001)).

¶29. Kathryn Rodgers, a forensic analyst at Scales Biological Laboratory, testified about DNA on a cloth found near the burning money box. Lyons did not to object to the admission of evidence about the cloth or the test results. "In order to preserve an issue for appeal, counsel must object. The failure to object acts as a waiver." *Carr v. State*, 873 So. 2d 991, 1004 (¶35) (Miss. 2004). When Lyons's counsel was specifically asked if there were any objections to the report containing the cloth's DNA test results being admitted as evidence, counsel replied, "No." Therefore, Lyons failed to preserve this issue for appeal.

10

*IV.* *Whether the prosecution presented evidence in a way to create a materially false impression of the evidence.*

¶30. Lyons contends that Rodgers's testimony and the State's argument about the cloth created a false impression of the evidence. Lyons argues that Rodgers testified that the cloth did not contain any DNA evidence from Lyons, but did from Harris. The State asserted the presence of Harris's DNA corroborates her version of events. Lyons, however, contends that Harris testified she did not aid in the crime, so the presence of her DNA on the cloth discredits rather than substantiates her testimony.

¶31. Again, when the cloth and its DNA test results were presented in court and offered into evidence, there were no objections made on behalf of Lyons. Therefore, the failure to object acts as a waiver. *Carr*, 873 So. 2d at 1004 (¶35). In addition, this Court has repeatedly held that "[t]he jury is the final arbiter of a witness's credibility." *Williams v. State*, 794 So. 2d 1019, 1028 (¶59) (Miss. 2001) (citing *Morgan v. State*, 681 So. 2d 82, 93 (Miss. 1996)). Thus, Harris's and Rodgers's credibility as witnesses rested with the jury. This issue is without merit.

*V.* *Whether Lyons's right to a fair trial was violated by a State's witness using a cell phone while on the stand.*

¶32. Lyons's claims that Ewell recorded her testimony on her phone and then shared it with Harris. Lyons only raises this claim in his supplemental brief, and it is not corroborated by the record or through any affidavits. There is nothing in the record to support his claim. Further, Lyons did not raise this issue before the trial court. Therefore, this issue has no merit.

*VI.* *Whether Lyons's right to a fair trial was violated by a picture of the victim being left on the screen during closing arguments.*

¶33. Lyons claims the State's strategy of displaying a photograph of the victim during closing arguments was prejudicial. The admissibility of photographs rests within the sound discretion of the trial court. *Jackson v. State*, 672 So. 2d 468, 485 (Miss. 1996). The "[d]iscretion of trial judge to admit photographs in criminal cases runs toward almost unlimited admissibility regardless of gruesomeness, repetitiveness, and extenuation of probative value." *Brown v. State,* 690 So. 2d 276, 289 (Miss. 1996). In addition, use of photographs during closing arguments is within the discretion of the trial judge and is allowed as long as "the use of [the photograph] during closing arguments [is not] for the sole purpose of inflaming the jury." *Woodward v. State*, 726 So. 2d 524, 537 (¶46) (Miss. 1997).

¶34. The trial judge and the opposing counsel were present when the photograph of Deere was left in front of the jury during closing arguments. The record does not indicate that the judge abused his discretion by allowing the photograph to remain, nor does the record indicate the State intended to inflame the jury through its use. Thus, Lyons's argument lacks merit.

*VII.* *Whether the trial court erred by not granting a mistrial.*

¶35. Lyons asserts that after the State's witness testified that Lyons had committed several robberies in the past of which there was no evidence and for which he was not currently on trial, his rights to a fair trial and due process were violated. "[E]vidence of past crimes not resulting in convictions is generally inadmissible." *Shoemaker v. State*, 502 So. 2d 1193, 1195 (Miss. 1987) (citations omitted). Further, "[a] mistrial in such a case is proper 'unless

12

it can be said with confidence that the inflammatory material had no harmful effect on the jury.'" *Id.* (citations omitted).

¶36.    However, "[t]o find error from a trial judge's failure to declare a mistrial, there must have been an abuse of discretion." *Brent v. State*, 632 So. 2d 936, 941 (Miss. 1994).  There is a strong presumption that a jury will follow instructions given to them by the court. *McFee v. State*, 511 So. 2d 130, 136 (Miss. 1987) (citing *Arteigapiloto v. State*, 496 So. 2d 681, 685 (Miss. 1986)).  "The trial judge is in the best position to determine if an alleged objectionable remark has a prejudicial effect." *Bougon v. State*, 883 So. 2d 98, 105-06 (¶14) (Miss. Ct. App. 2004) (citing *Weeks v. State*, 804 So. 2d 980, 992 (¶37) (Miss. 2001)).  The trial judge is provided considerable discretion in determining whether a remark is so prejudicial that a mistrial should be declared. *Id.*  But if serious and irreparable damage has not occurred, then the trial judge should direct the jury to disregard the remark. *Id.*

¶37.    This Court finds that the trial court did not abuse its discretion by denying Lyons's request for a mistrial.  The trial court admonished and polled the jury to make assurances that they knew there was no evidence of these other crimes and that they should ignore the statement and not consider it whatsoever.  Based on these actions, the trial court took appropriate measures to cure any potential prejudicial effect of the remark.  As such, this Court cannot say the trial court's refusal to declare a mistrial was in error.

    VIII.    *Whether Lyons received ineffective assistance of counsel.*

¶38.    Lyons also asserts that he received ineffective assistance of counsel when his trial counsel failed to: (1) call four specific witnesses; (2) adequately use impeachment and

exculpatory evidence; (3) thoroughly investigate reports in the discovery material and credentials of the expert witness; (4) object to a number of occurrences at trial that were unfairly prejudicial to Lyons's defense; and (5) suggest to the trial court a lesser included offense to armed robbery.

¶39. "When considering a claim of ineffective assistance of counsel, this Court must find that trial counsel's performance was deficient and that [it is reasonably probable that] there would have been a different result in the verdict if it were not for trial counsel's deficiency." *Payton v. State*, 41 So. 3d 713, 719 (¶23) (Miss. Ct. App. 2009); *see also Kirksey v. State*, 728 So. 2d 565, 567 (¶10) (Miss. 1999). "The defense counsel is presumed to have acted competently and the effectiveness of his or her efforts [is] determined on the basis of the totality of the circumstances." *Kirksey*, 728 So. 2d at 567 (¶10) (citation omitted).

¶40. Additionally, "[this] Court rarely determines issues of ineffective assistance of counsel on direct appeal unless: '(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial court.'" *Payton*, 41 So. 3d at 719 (¶23) (quoting *Graves v. State*, 914 So. 2d 788, 798 (¶35) (Miss. Ct. App. 2005)).

¶41. Lyons maintains that his attorney rendered ineffective assistance when he failed to call four specific witnesses to testify during trial. Lyons contests three of those witnesses should have been called to testify on his behalf about Baggett's false confession. As stated previously, however, the charges were dropped for lack of physical evidence. Further,

"'counsel's choice[s] of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy' and will not stand as support for an ineffective assistance of counsel claim." *Jackson v. State*, 73 So. 3d 1176, 1181-82 (¶22) (Miss. Ct. App. 2011) (citations omitted). As such, Lyons failed to prove his counsel acted in a constitutionally deficient manner.

¶42. Further, "[t]his Court will only under exceptional circumstances second guess counsel on matters of trial strategy." *Hill v. State*, 850 So. 2d 223, 226 (¶14) (Miss. Ct. App. 2003) (citing *Marshall v. State*, 759 So. 2d 511, 513 (¶11) (Miss. Ct. App. 2000)). This Court cannot find that the alleged errors by Lyons's counsel "were so egregious as to constitute a deficiency in performance or prejudicial to [Lyons]'s defense as to affect the outcome of trial." *Cole v. State*, 666 So. 2d 767, 777 (Miss. 1995).

¶43. Also, this Court finds the record does not affirmatively show any indication of ineffective assistance of counsel. "The Mississippi Supreme Court has stated that, where the record cannot support an ineffective assistance of counsel claim on direct appeal, the appropriate conclusion is to deny relief, preserving the defendant's right to argue the same issue through a petition for post-conviction relief." *Wilcher v. State*, 863 So. 2d 719, 761 (¶162) (Miss. 2003) (quoting *Aguilar v. State*, 847 So. 2d 871, 878 (¶17) (Miss. Ct. App. 2002)). The parties here did not stipulate to the adequacy of the record for this Court to find ineffective assistance. Therefore, this Court declines to find ineffective assistance of counsel at this juncture, but preserves this issue for post-conviction relief.

IX.     *Whether the trial court erred in refusing jury instruction D-10.*

15

¶44. Lyons contends that a quantum-of-proof instruction is required in cases based on circumstantial evidence. A quantum-of-proof instruction states that "[t]he court instructs the jury that a reasonable doubt may arise from the whole of the evidence, the conflict of the evidence, the lack of evidence, [or] the insufficiency of the evidence, but however it arises, if it arises, it is your sworn duty to find the Defendant 'not guilty.'" *Berry v. State*, 859 So. 2d 399, 405 (¶18) (Miss. Ct. App. 2003). Lyons contends that the trial court erred by failing to give jury instruction D-10, which was a quantum-of-proof instruction. However, a quantum-of-proof instruction was given in instruction D-3.

¶45. The trial court is "under no obligation to grant redundant instructions." *Montana v. State*, 822 So. 2d 954, 961 (¶26) (Miss. 2002). "The refusal to grant an instruction which is similar to one already given does not constitute reversible error." *Id.* "With jury instruction D-10 being cumulative and repetitious, it was properly refused by the trial court." *Id.* Therefore, this issue is without merit.

X.     *Whether the cumulative errors in this case require reversal.*

¶46. As a final contention, Lyons argues that cumulative error requires this Court to reverse and remand this case. "The cumulative error doctrine stems from the doctrine of harmless error[,] which holds that individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." *Thompson v. State*, 990 So. 2d 265, 270 (¶12) (Miss. Ct. App. 2008) (quoting *Harris v. State*, 970 So. 2d 151, 157 (¶24) (Miss. 2007)). "However, reversal based upon cumulative error requires a finding or

16

findings of error." *Id.* Because this Court finds no error in any of Lyons's contentions on appeal, the cumulative-error doctrine does not apply. This issue is without merit.

**¶47. THE JUDGMENT OF THE LINCOLN COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, MANSLAUGHTER, AND SENTENCE OF TWENTY YEARS; AND COUNT II, ARMED ROBBERY, AND SENTENCE OF THIRTY-FIVE YEARS, WITH FIVE YEARS SUSPENDED, FOLLOWED BY FIVE YEARS OF POST-RELEASE SUPERVISION, WITH THE SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A $5,000 FINE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LINCOLN COUNTY.**

**LEE, C.J., IRVING, P.J., ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**