# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01339-COA

**DERRICK YOUNG**                                                                 **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/20/2017 |
| TRIAL JUDGE: | HON. GEORGE M. MITCHELL JR. |
| COURT FROM WHICH APPEALED: | ATTALA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF ATTORNEY GENERAL |
| | BY: KAYLYN HAVRILLA MCCLINTON |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/12/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., TINDELL AND McDONALD, JJ.

### CARLTON, P.J., FOR THE COURT:

¶1.     Young was indicted on one count of armed robbery, in violation of Mississippi Code Annotated section 97-3-79 (Rev. 2014), and one count of possession of a firearm by a felon, in violation of Mississippi Code Annotated section 97-37-5(1) (Rev. 2014).  He was tried on September 14, 2017, in Attala County Circuit Court.  During voir dire, Young was removed from the courtroom due to his outbursts and belligerent behavior that took place both before trial started and during voir dire in front of the jury panel.

¶2.     Young's counsel moved for a mistrial on the grounds that the jury panel had seen some of Young's outbursts and had heard an altercation between Young and law enforcement

officers when he was removed from the courtroom. The trial court denied the motion. Later, Young was brought back into the courtroom to testify on his own behalf and was allowed to stay in the courtroom for the remainder of trial.

¶3. The jury found Young guilty of both counts against him, and the trial court sentenced Young as a habitual offender to serve twenty-five years in the custody of the Mississippi Department of Corrections (MDOC) for the armed-robbery conviction and ten years for the felon-in-possession conviction, to run consecutively. Young appealed, asserting that (1) the trial court erred in removing him from the courtroom; and (2) the trial court erred by denying his motion for a mistrial. Finding no error, we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶4. As detailed below,[1] Young was removed from the courtroom after voir dire had begun due to a number of his outbursts before trial and during the beginning of voir dire. Before voir dire resumed, Young's counsel moved for a mistrial on the grounds that the jury panel had seen some of the defendant's outbursts and had overheard a scuffle between Young and law enforcement officers outside the courtroom when Young was removed from the courtroom. The trial court held its ruling in abeyance until voir dire was completed. After voir dire, the motion for mistrial was revisited and denied by the trial court. The jury was selected, and the State presented its case. Young was brought back into the courtroom to testify on his behalf and was allowed to stay for the remainder of the trial upon his assurance

---

[1] To avoid repetition, the proceedings relevant to the issues on appeal concerning Young's removal from the courtroom and the trial court's subsequent denial of his motion for mistrial are addressed in further detail below.

to the trial court that he would behave.

¶5.    The State's first witness was the cashier on duty at the Blue Sky Exxon in Kosciusko on January 29, 2016, around 1:00 a.m.  She testified that, at that time, two masked men with guns entered the store, ordered her to open the cash register, and then took the entire cash drawer, which amounted to around $300.  The cashier testified that the men then left the store, got in a vehicle, and left the scene.

¶6.    Officer Danny Groves, of the Kosciusko Police Department, was the State's next witness.  He testified that the driver of the vehicle, Beatrice Davis, was eventually found with the car a few miles down the road, and she was taken into custody.  Officer Bradley Fancher, who was working for the Kosciusko Police Department at the time, testified that he arrived at the scene, and then recovered a handgun, two masks, and a white glove from the getaway vehicle.

¶7.    Beatrice Davis then testified, stating that she was with Derrick Young (the defendant) and Antonio Gant the evening of January 28th, and they talked about "hit[ting] a lick," meaning "get[ting] some money."  She testified that Young and Gant robbed the Blue Sky Exxon in Kosciusko.

¶8.    Investigator Greg Collins with the Kosciusko Police Department testified that Young and Gant were arrested based upon the information provided by Davis, and their DNA was collected to compare to the DNA found in the two masks.  The State's forensic scientist, Brandi Goodman, testified that the two masks recovered from the vehicle contained DNA from Young and Gant.

¶9.    As noted above, Young was then brought into the courtroom to testify on his own behalf.  He testified that he was not involved with the robbery of the Blue Sky Exxon in Kosciusko on January 29, 2016.

¶10.    The jury found Young guilty on both counts against him, Count I, armed robbery, and Count II, felon in possession of a firearm.  The trial court sentenced Young as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015) to twenty-five years in the custody in MDOC for the armed robbery conviction and ten years for the felon-in-possession conviction, to run consecutively.  Young filed a motion for a judgment notwithstanding the verdict, or in the alternative, for a new trial.  The trial court denied it. Young appealed.

## DISCUSSION

### I.    Young's Removal from the Courtroom

¶11.    Young asserts that his Sixth Amendment right to be present at his trial was violated because (1) his conduct in the courtroom was not so disruptive that it was necessary to remove him, and (2) even if his removal was justified, the trial court erred because it did not tell him that he could return to the courtroom if he assured the court of future good behavior.  For the reasons addressed below, we find Young's contentions are without merit.

¶12.    "A circuit court's decision to try a defendant in absentia is reviewed under an abuse-of-discretion standard." *Haynes v. State*, 208 So. 3d 4, 6 (¶10) (Miss. Ct. App. 2016). Under the Sixth Amendment, an accused has "the right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338 (1970); *accord Allen v. State*, 384 So.

4

2d 605, 608 (Miss. 1980); *see also* MRCrP 10.1. This right, however, is not absolute: "[A] defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Illinois v. Allen*, 397 U.S. at 343; *see Bostic v. State*, 531 So. 2d 1210, 1213 (Miss. 1988). A defendant's right to be present "can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Illinois v. Allen*, 397 U.S. at 343.

¶13. This concept is embodied in Rule 10.2 of the Mississippi Rules of Criminal Procedure. In relevant part, Rule 10.2 provides:

> Rule 10.2. Consequences of Defendant's Disruptive Behavior
>
> (a) Disruptive Conduct. A defendant who engages in disruptive or disorderly conduct may be removed and shall forfeit the right to be present at that proceeding.
>
> (b) Restoration of Right. The court shall grant any defendant so removed reasonable opportunities to return to the court upon the defendant's personal assurance of good behavior and/or such other conditions as the court may require. Any subsequent disruptive conduct on the part of the defendant may result in removal. . . .

MRCrP 10.2. In *Bostic v. State*, the Mississippi Supreme Court recognized four constitutionally permissible ways for a trial court to handle a disruptive criminal defendant, including "[r]emoval of the 'defendant from the courtroom and [a] continu[ance of] his trial in his absence until and unless he promise[s] to conduct himself in a manner befitting an

5

American courtroom.'" *Bostic*, 531 So. 2d at 1213 (quoting *Illinois v. Allen*, 397 U.S. at 345).

¶14.    The facts relevant to this issue are as follows.  Before trial started, out of the presence of the jury panel, Young went before the trial court and announced that he did not want to be represented by his appointed counsel, Rosalind Jordan.  The judge replied that the county has two public defenders, Mrs. Jordan, and another attorney, who was already representing a co-defendant in the case.  Young indicated he could maybe get "[his] other lawyer to probably stand in for me, representing me," but Young could not explain why that attorney was not present in court.  The judge told Young that Mrs. Jordan would continue to represent him and the case would go to trial that day.  In response, Young told the judge, "I am telling you, I am not go to court with this woman.  Not today.  Not today."  When the judge told Young to sit down, Young again repeated that he would not go to trial with Mrs. Jordan as his attorney.  Young was given the opportunity to represent himself, and he declined.

¶15.    Young's conduct led to his first warning from the trial judge: "I want you to understand that this court will not tolerate from you any lack of respect.  Now, I am on the record giving you a warning that should you wish to be disruptive in this court, I'll have to take certain actions . . . .  Now, you want to be disruptive in my court, you can be removed, and I can continue the trial without you being here."

¶16.    The trial judge later reiterated this warning to Young's counsel:  "For the record . . . I previously have already in this morning made announcements in front of the defendant that I will not tolerate any disruptive behavior from him. All right. In conjunction with that, I intend also to enforce anything that I need to do to prevent such. And as such, Mrs. Jordan,

6

do you understand from representing this individual that I am not going to put up with any disruptive conduct on his behalf?" Defense counsel indicated she understood.

¶17. Young's counsel also notified the trial court that she feared for her physical safety based on Young's demeanor that morning. She was afraid that he may "attempt drastic measures to halt this trial." The trial court had a deputy seated near defense counsel's table and placed Young's seat at the end of the table. When seated, Young said, "I am not fixing to have this." The deputy told him to sit down. This led to Young's second warning: "Mr. Young, for the record, again, I want to admonish you and advise you that the court will not put up with any type of disruptive conduct . . . . I just want to make sure you understand that we are not going to tolerate that at all, either verbally or trying to push or shove anybody or anything. We just can't allow that to happen."

¶18. The trial judge then asked if the parties were ready to proceed, and Young spoke out and said, "No, we are not." The judge said, "Sir, I have admonished," but Young again repeated that "we are not ready to proceed . . . . I do not want Miss Rosalind representing me, Rosalind Jordan representing me." Young made similar outbursts as voir dire commenced once the jury panel had been brought in. During the trial court's introduction to the jury panel, Young tried to stand up and a deputy put his hand on Young's shoulder. Young told the deputy several times to "get [his] hands off [him]."

¶19. At this point, the trial judge asked that the lawyers, Young, and the court reporter meet in his chambers. While en route to chambers, Young allegedly assaulted one of the deputies and was detained. In chambers, the trial judge stated on the record that Young had become

7

"very unruly, disruptive, very agitated and very loud," and he informed counsel that he was going to warn Young that he may be "secured and gagged" or removed from the courtroom if his disruptive behavior continued.

¶20.   Young was then brought into chambers, and the trial judge issued a third warning:

> You're evidencing belligerence on your part. I'm going to have to give you an option. . . .  I can send a deputy, and I can obtain enough tape to secure you to the chair while I proceed with this trial if you intend to mouth off about that. I would not like to do such, but I can gag your mouth and prevent you from being disruptive to keep you in the courtroom. I do not have the facilities in this courtroom to put you in a video room to watch the proceedings. But if such becomes so very unbearable, I'll have no choice but to proceed with this trial with you being removed from the courtroom.

In response, Young said, "I do not want Rosalind Jordan to represent me."  Young repeated, "I said I do not want Rosalind Jordan to represent me. What don't y'all understand about that?"  After argument by the prosecutor to have Young removed from the courtroom, Young interjected, "I will not go before you without a lawyer, and it will not be Rosalind Jordan." The trial judge reminded Young that he had a year and a half to hire a lawyer and failed to do so.  Young said that he did not want Rosalind Jordan to represent him because she recently warned him that there was a high likelihood that he would be convicted.  Young insisted that in order to get a fair trial, he needed a different lawyer.  The judge assured Young that he would ensure he got a fair trial, and they would be headed back into the courtroom.  Young replied, "I'm not going."

¶21.   At that point, the trial judge explained the situation to Young, as follows:  "Now, you can go in there, and you can be cooperative.  You can listen, and you can do what you can to help your attorney.  Or you can select, by your own action, to be excluded from the

8

courtroom." Again, Young said he did not want Mrs. Jordan to represent him. Young continued to interrupt the judge and make repeated outbursts that he would not be represented by Mrs. Jordan. Finally, the judge asked Young, "Are you going into that courtroom and be quiet—yes or no?" Young responded, "I'm not going back in there, Your Honor." The judge said, "That's enough. You've waived your presence in the courtroom." Young was then ordered back to incarceration.

¶22. In chambers the trial judge and the attorneys then discussed Mississippi Criminal Rule 10.2 and determined that it applied to the situation. The trial judge stated, "[B]ased upon the defendant's conduct in this case and Rule 10.2, he has been excluded from the courtroom."

¶23. During the presentation of the State's case, Young's counsel did not move or otherwise request that Young be allowed to provide his assurance of good behavior to the court so that he could be allowed back into the courtroom. At the close of the State's case, however, Young's counsel requested that the court bring Young before it, and advise Young of his constitutional right to testify, as follows: "I know that Mr. Young has executed his constitutional right not to be present during his trial . . . based upon his disruptive behavior. He does have a right to testify at trial if he so desires. I think the Court needs to bring him back in, outside the presence of the jury and ask him, advise him of his constitutional right to testify and find out if he is going to testify or not." The court agreed, Young was brought before the court, and the trial judge explained to him that he had the right to testify.

¶24. Young asked to speak to his attorney. Mrs. Jordan agreed to "speak with Mr. Young off the record but with law enforcement officers present and with Mr. Young restrained," in

9

order to explain to him what had occurred thus far in the trial "so that he can make an informed, intelligent decision as to whether he wants to testify or not." Young testified, and at the end of his testimony, the trial court sent the jury into a brief recess. The trial judge then spoke to Young, asking him whether, "if the court sees fit to let you sit over where we originally started this morning, will you agree with me that you won't create any problem?" Young promised, "No, sir. . . . I won't create any problem." Young was allowed to remain in the courtroom for the remainder of his trial.

### A.     Young's Conduct

¶25.    Young argues that his conduct was not so "disruptive or disorderly" that it warranted his removal from the courtroom. We disagree. The record and the trial transcript reflect that Young's behavior amounted to "disruptive and disorderly conduct" warranting his removal from the courtroom, and we find that the trial court did not abuse its discretion in doing so. Young frequently interrupted the proceedings with his outbursts, he became physically agitated and violent, and he would not desist in his behavior. His own lawyer was afraid of him. Young was repeatedly warned by the trial judge of the consequences of his actions, but he persisted in his disruptive conduct, thus resulting in his "knowing and intelligent waiver of his right to be present at trial" after being given at least four warnings. *See Bostic*, 531 So. 2d at 1213 ("If a defendant . . . persists in his disruptive conduct [after being warned of the consequences of his actions], he has made a knowing and intelligent waiver of his right to be present at trial.").

### B.     Return Based Upon Defendant's Personal Assurance of Good Behavior

¶26. We likewise find no merit in Young's argument that the trial court erred when, according to Young, it did not tell him he could return to the courtroom based upon his personal assurance of good behavior. The record reflects that the trial judge told Young that he could stay in the courtroom if he cooperated and Young refused. The trial judge later let Young return after Young cooled off and decided to cooperate. It cannot be said that Young or his counsel were unaware that upon an assurance of good behavior, Young could return to the courtroom. *Cf. Bostic*, 531 So. 2d at 1213-14 (Although the trial court did not warn the defendant that he would be removed if his disruptive behavior continued, the Mississippi Supreme Court looked at the surrounding circumstances and determined that, on the whole, "it could not be said that the defendant was unaware that his disruptive conduct was the reason for his first removal.").

¶27. In particular, after Young's removal, but before the trial was reconvened, the trial judge and the attorneys reviewed Rule 10.2 and determined that it was the governing authority. Subparagraph 10.2(b) provides that "[t]he court shall grant any defendant so removed reasonable opportunities to return to the court upon the defendant's personal assurance of good behavior . . . ." The plain language of Rule 10.2(b), and the ensuing discussion about its applicability, put Young's attorney on notice that the defendant could be allowed back into the courtroom upon his "personal assurance of good behavior."[2] Defense

---

[2] Similarly, implicit in the trial judge's warnings to Young is the idea that should Young decide to cooperate, he may be allowed to return to the courtroom. For example, the judge told Young, in his counsel's presence, "Now, you can go in there, and you can be cooperative. You can listen, and you can do what you can to help your attorney. Or you can select, *by your own action*, to be excluded from the courtroom." Later, the trial judge told Young, in his counsel's presence, "Are you going into that courtroom and be quiet—yes or

11

counsel could have advised Young on this point, and moved that he be allowed to return upon agreeing that he would behave. *Cf. Lewis v. Robinson*, 67 F. App'x 914, 922 (6th Cir. 2003) (finding that, "[i]n compliance with [*Illinois v.*] *Allen*, Petitioner was permitted to return to the courtroom *at the request of his counsel* upon agreement to conduct himself properly") (emphasis added). No attempt, however, was made by the defense to make such a request. As noted above, however, the trial judge did explain to Young that he could stay in the courtroom if he cooperated. Young refused. Later, Young returned to the courtroom to testify, Young displayed his cooperation with the proceedings, and was allowed to remain in the courtroom. Reviewing these circumstances in light of the deference owed the trial court's decision on this issue, as we must,[3] we find without merit Young's contention that the trial court erred in failing to specifically tell him he could return to the courtroom upon his assurance of good behavior.

## II. Young's Request for a Mistrial

¶28. Young asserts that the trial court erred when it did not grant his motion for a mistrial because the jury panel members were exposed to three prejudicial occurrences when they: (1) observed Young's conduct during voir dire; (2) overheard shouting and scuffling sounds in the hallway between Young and the courtroom deputies; and (3) observed Young's own father shouting at him. These prejudicial occurrences, Young asserts, negatively affected

---

no?" Young said, "I'm not going back in there, Your Honor."

[3] *See Illinois v. Allen*, 397 U.S. at 343 ("We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.").

those who ended up on Young's jury to the extent that a mistrial should have been granted. We find no merit in this contention for the reasons addressed below.

¶29. "The standard of review for the denial of a mistrial is abuse of discretion." *Ambrose v. State*, 254 So. 3d 77, 116 (¶112) (Miss. 2018). "A trial judge need declare a mistrial only when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant's case." *Hutto v. State*, 227 So. 3d 963, 984 (¶66) (Miss. 2017).

¶30. Rule 23.5 of the Mississippi Rules of Criminal Procedure provides the standard governing mistrials and provides, in relevant part, as follows:

> Upon motion of any party, the court may declare a mistrial if there occurs during the trial, either inside or outside the courtroom, misconduct by a party . . . resulting in substantial and irreparable prejudice to the movant's case.
>
> Upon motion of a party or its own motion, the court may declare a mistrial if:
>
> (a) The trial cannot proceed in conformity with the law; or
> (b) It appears there is no reasonable probability of the jury's agreement upon a verdict.

MRCrP 23.5.

¶31. Our review of the record indicates that Young has not shown that he suffered "substantial and irreparable prejudice" under the circumstances that occurred here. After Young interrupted the voir dire proceedings with another outburst declaring that he did not want Mrs. Jordan to represent him, the trial judge halted voir dire and requested that the court reporter, the attorneys, and the defendant meet in his chambers. The trial transcript reflects that the judge described what ensued, as follows: "I have asked that everyone meet in chambers here, along with defendant. And in the process the defendant has become very

13

unruly, disruptive, very agitated and very loud." The record reflects that the noises were due to a scuffle in the hallway outside the courtroom between Young and the deputies, and from Young's father shouting at him. Ultimately the trial court ruled that Young would be excluded from the courtroom, as detailed above.

¶32. At this point, defense counsel moved for a mistrial on the grounds that Young's behavior inside the courtroom was seen by the jury panel and that the jury panel had heard the scuffling and shouts that occurred when the deputies were attempting to subdue Young in order to bring him into the judge's chambers. The trial judge held off ruling on the motion, stating, "We will go ahead and complete voir dire. And then I'll let you renew your motion, if you so elect." Voir dire was restarted.

¶33. During defense counsel's voir dire examination, she asked, "Is there anyone here this morning that did not witness Mr. Young's conduct? If you did not witness his conduct, please, raise your hand. All right. By the fact that no one has raised their hand, I'm assuming that everyone here witnessed his conduct. Okay. Is there anyone here today that did not hear the yelling from the hall behind the courtroom? If you did not hear that, please, raise your hand. Okay. Because no one has raised their hand, I'm assuming that everyone heard that."

¶34. Next, defense counsel reminded the jury panel of the trial court's earlier instructions regarding the importance of truthful answers. She then said, "I need to know of you here [who] witnessed Mr. Young's behavior and [who] overheard the yelling in the hall in the background, has that behavior caused you to prejudge or have an opinion about Mr. Young that is negative?" Two potential jurors indicated that their opinion of Young was negatively

14

affected by his behavior and the yelling.[4] Defense counsel again emphasized the importance of a fair and impartial jury and then asked, "Do you have any preconceived notions, opinions you have formulated? Now is the time to be honest and come forward and let the Court know." No one else indicated they had such preconceived notions.

¶35. After voir dire was completed, defense counsel renewed her motion for a mistrial. The trial judge denied the motion. He found that the jury panel had seen one of Young's outbursts in which he announced that he did not want his counsel representing him, but that the jury panel did not see what was happening in the hallway when Young was escorted to his chambers. The trial judge found that no prejudice had occurred "[g]iven the fact [that] even [when] the jury panel was asked if they saw or heard anything that caused them to become prejudiced, only two [out of the jury panel] gave any affirmative indication." These two jury panel members were struck for cause during jury selection.

¶36. Young cites *Snow v. State*, 800 So. 2d 472 (Miss. 2001), *overruled in part on other grounds*, 875 So. 2d 188, 191 (¶5) (Miss. 2004), in support of his argument that a mistrial should have been declared in his case. *Snow v. State*, however, actually supports the trial court's decision to overrule Young's motion. In that case, the defendant contended that a mistrial should have been declared after emotional outbursts by members of the victim's family took place during the prosecutor's closing argument. *Snow*, 800 So. 2d at 484 (¶¶37-38). The court found that "[t]here was no abuse of discretion in denying the motion for mistrial. The record does not support, nor indicate how this emotional outburst prejudiced

---

[4] The record indicates that there were approximately 61 or 62 people on the jury panel.

15

Snow to a degree that a mistrial was warranted." *Id.* at 486 (¶43).

¶37.     We likewise find that here, under circumstances far less emotionally-charged than those in *Snow v. State*, there was no abuse of discretion in the trial court denying Young's motion for a mistrial. We find no support in the record that the circumstances in this case prejudiced Young to such a degree that a mistrial was warranted.

¶38.     The trial transcript indicates that the trial judge explained to the potential jurors that the purpose of voir dire was to ensure a fair and impartial jury to hear Young's case, and instructed them that it was their duty to be truthful in answering any questions regarding their ability to serve fairly and impartially. The trial transcript further reflects that the potential jurors were specifically asked if they could be fair and impartial after witnessing Young's outbursts and hearing the ensuing commotion. Particularly relevant is the fact that only two people indicated that they could not be, and these potential jurors were struck for cause during jury selection. There is no indication in the record that the seated jury was biased or prejudiced due to Young's behavior. The jurors were instructed that they must base their decision solely upon the evidence presented a trial, and there is a strong presumption that a jury will follow instructions given to them by the court. *Lyons v. State*, 237 So. 3d 763, 772 (¶36) (Miss. Ct. App. 2017).

¶39.     In short, we find no merit in Young's assertion that the trial court erred in denying his motion for a mistrial. *Sharkey v State*, No. 2017-KA-01353, 2019 WL 967400, at *3 (¶15) (Miss. 2019) (finding no abuse of discretion in the trial court's denial of defendant's motion for mistrial where the allegedly prejudicial statement "was made during voir dire, and the only

juror who told the court that he could not be impartial [based on this information] was excused for cause," and the defendant presented no evidence that he suffered "substantial and irreparable prejudice"); *see Chambliss v. State*, 233 So. 3d 898, 902 (¶¶16-19) (Miss. Ct. App. 2017) (finding that the trial court did not abuse its discretion in denying a mistrial based upon potential juror's outburst where the trial court instructed jurors about their duty to be fair and impartial).

¶40.   **AFFIRMED.**

      **BARNES, C.J., J. WILSON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**